**Young In HONG, Plaintiff–Appellant,**

v.

**CHILDREN'S MEMORIAL HOSPITAL, Defendant–Appellee.**

No. 90–3728.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1991.

Decided July 11, 1991.

---

Louis E. Sigman, Dale D. Pierson, Pasquale A. Fioretto, Baum & Sigman, Chicago, Ill., for plaintiff-appellant.

Donald F. Peters, Jr., Thomas T. Cavanaugh, Chicago, Ann Haule, Children's Memorial Hospital, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This case presents a challenge to the validity of a so-called workshare agreement between the Equal Opportunity Employment Commission (EEOC or Commission)

and the Illinois Department Human Resources (IDHR) which governs the initial jurisdiction of the two agencies over employment discrimination complaints filed in Illinois.

Young In Hong was discharged by Children's Memorial Hospital on October 20, 1987. One hundred and eighty-two days later, she attempted to file a discrimination complaint against Children's with the IDHR alleging that the hospital discharged her because of her national origin. Hong was told by state authorities that she was two days too late to file a complaint under Illinois law, but that she could still file with the EEOC because that agency operated under a 300–day federal statute of limitations. *See* 42 U.S.C. § 2000e–5(e). Hong took this advice; rather than file an untimely complaint with the state, she proceeded to the EEOC where she filed charges against Children's 193 days after her discharge. Soon thereafter, the EEOC granted Hong the right to sue and she filed a Title VII action against Children's in district court. The district court dismissed her suit. The court interpreted Title VII to require plaintiffs to file discrimination claims with the IDHR and await either state resolution of their claim or the passage of sixty days before they could turn to the EEOC for relief under federal law. Because Hong did not comply with this requirement and instead filed initially with the EEOC, the court held that her Title VII suit should be dismissed for failure to exhaust state administrative remedies. Hong appeals the dismissal of her complaint. We reverse.

Under Title VII, in a state like Illinois, which provides an administrative remedy for employment discrimination, a plaintiff may not file a discrimination charge with the EEOC until the charge is first filed with the appropriate state agency and either (1) sixty days has elapsed or (2) the agency terminates its proceedings. *See* 42 U.S.C. § 2000e–5(c).[1] This so-called "defer-

1. In relevant part, § 2000e–5(c) reads:
   In the case of an alleged unlawful employment practice occurring in a State, ... which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed [under this section] by the person aggrieved before the expiration of sixty days after proceedings have

ral" mechanism was the product of a legislative compromise in the negotiations leading to the passage of Title VII; it was designed by Congress to give States a " 'reasonable opportunity to act under State law before the commencement of any Federal proceedings.' " *EEOC v. Commercial Office Prods.*, 486 U.S. 107, 117, 108 S.Ct. 1666, 1672, 100 L.Ed.2d 96 (1988) (plurality opinion) (quoting 110 Cong.Rec. 12708 (1964) (remarks of Sen. Humphrey)); *see also id.* at 117 n. 3, 108 S.Ct. at 1672 n. 3 (collecting cases); *cf. Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (deferral provisions "give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by the victims of the discrimination").

■ Not all states, however, have taken advantage of this statutorily mandated opportunity—and we stress that it is an opportunity, not a duty, *see Commercial Office Products*, 486 U.S. at 118, 108 S.Ct. at 1673—to adjudicate the discrimination claims of their citizens before the federal government is allowed to enter the field. Indeed, many have decided that the deferral process is often inefficient and results in no more than the unnecessary duplication of paperwork and effort by state and federal agencies. *See generally*, Brief for Colorado *et al.* as *Amici Curiae* in *Commercial Office Products*, available on LEXIS (Genfed library, Briefs file) ("Brief for Colorado"). These states—Illinois is one—have chosen to forego their statutory right to initially process employment discrimination claims in certain circumstances. They have done so by entering into so-called "workshare agreements" with the EEOC in which they waive their exclusive right under Title VII to initially process

certain claims and categorically defer first rights over those claims to the EEOC.[2] We say "certain claims" because typically—and the agreement at issue here between the IDHR and the EEOC fits the mold—the agreements set out particular categories of discrimination claims over which a state wishes to retain initial jurisdiction and other categories of claims that it would rather shunt directly to the EEOC for initial processing.

■ To administer the agreement and facilitate the routing of discrimination complaints to the appropriate initial reviewing agency, Illinois has designated a particular employee in the EEOC's regional office to act as its agent. That agent receives discrimination complaints like Hong's that have not been first filed with the state and determines whether Illinois waives its first dibs under the workshare agreement (and therefore the complaint should be initially processed by the EEOC) or whether the state wishes to exercise its jurisdictional prerogative under the Title VII deferral provisions (and thus the complaint should be sent back to the state authorities for further processing). In the former case, the state agent in the EEOC office officially "terminates" state processing of the complaint, so that the EEOC is free under Title VII to begin its own investigatory process. In the latter case, plaintiffs must wait until sixty days have elapsed or until the state terminates the complaint before they can file with the Commission.

In Hong's case, Illinois' designated agent in the EEOC regional office, Mitchell Edison, received her complaint and determined that it was within the category of complaints over which the state did not wish to exercise its right of initial processing. Acting as the state's agent and pursuant to the workshare agreement in force at the

been commenced under State or local law, unless such proceedings have been earlier terminated....

2.  *See* Brief for Colorado, *supra* at \*6:
    The deferral agencies know they cannot provide relief within 60 days and for this reason defer charges back to the EEOC. By clarifying primary responsibility for different categories of charges, worksharing agreements

benefit both the EEOC and the states. A state's interests are met because employment discrimination charges are investigated and resolved in an efficient and prompt manner without unnecessary 60–day delay and without duplication of effort. A state owes a duty to its citizens to see that their interests, both those of complainants and employers, are addressed in the most expeditious manner.

time, Edison terminated the state's interest in Hong's complaint. Then, acting in his capacity as an EEOC employee, he deemed the complaint filed with the federal government. All this took place well within the appropriate 300–day federal statute of limitations. What, then, was Hong's mistake?

The mistake, according to the district court, wasn't Hong's as much as that of the state and the EEOC. The court held the workshare agreement to be invalid; it ruled that Hong could not rely on Edison acting as the state's agent to terminate the state's interest in her complaint for the purposes of Title VII. Rather, the district court read Title VII, *see supra* note 1, to require Hong to *physically* file her complaint with the state and have the complaint terminated (or have sixty days pass) before she could seek redress at the Commission. The court thought the workshare agreement to be a "shell game" in which Edison acted—improperly—as a "one man IDHR."

> [The state's] position basically is that [Edison] was a one-person Illinois Department of Human Rights, and in his capacity as a one-person Illinois Department of Human Rights accepted, decided and terminated the IDHR proceeding sitting in his office, signing a piece of paper. [T]his is from a substantive point of view a shell game, [ ] one to which perhaps maybe a great deal of deference ought not be paid. I am of the view that the Worksharing Agreement did not authorize Edison to do what he did; and if the Worksharing Agreement did [so authorize], it was not within the power ... granted the EEOC by Congress. I simply do not think that this structure in deferral states was enacted by Congress so that a single person sitting in the EEOC could essentially excuse without actually any review of the merits of the timeliness of the original complaint the requisites of state processing.

*Hong v. Children's Memorial Hospital,* No. 90 C 827 (N.D.Ill. Nov. 7, 1990), Transcript at 9. The court thus dismissed Hong's complaint for her failure to file with the IDHR before turning to the EEOC for redress.

Illinois' workshare agreement with the EEOC may, as the district court put it, be an administrative "shell game," but we do not believe it is unlawful. We note initially that the agreement did not annoint Edison as a one-person IDHR with the power to decide whether or not to terminate state complaints. Rather, the agreement authorized Edison to carry out the state's wishes as those wishes were formulated by IDHR policymakers and set out in the workshare agreement. Edison was but the arm of the state, not its mind or its heart. Nevertheless, the question remains whether the agreement, as correctly characterized, is a legitimate mechanism to facilitate the initiation and termination of the processing of state employment discrimination complaints under Title VII.

We answered this question in the affirmative several months ago in *Sofferin v. American Airlines,* 923 F.2d 552 (7th Cir. 1991), a case which the district court, having dismissed Hong's complaint in August 1990, was unable to consider. The *Sofferin* court held that worksharing agreements could lawfully "provide that a filing with the EEOC simultaneously initiates and terminates state proceedings." *Id.* at 559; *see also id.* at 556, 558; *Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 879--880 (3d Cir.1990). We ruled in *Sofferin* that plaintiffs need not engage in the futile exercise of actually filing with the IDHR and then waiting for state termination or for sixty days to elapse when worksharing agreements provide, in the alternative, for direct filing with the EEOC and both initiation and termination of the state's interests pursuant to a prearranged waiver. We need not repeat *Sofferin's* extensive discussion of the relevant legislative history and judicial precedents that informed and supported that conclusion. In its brief, *Children's* acknowledges the language we have quoted from *Sofferin,* yet attempts to distinguish the case by pointing out that the court there did not expressly speak to the "validity of the IDHR designating an employee of the EEOC its agent." Brief at 18. We find this distinction unpersuasive. While *Sofferin* did not specifically speak to

the validity of the agent designation, it did expressly validate the overarching proposition at issue here—that the workshare agreement can alone effect both initiation and termination of the state proceedings and that, as a result, plaintiffs may file with the EEOC without first filing with the IDHR.

This jurisdictional mechanism may be unusual, but it is designed to facilitate the wishes of the states, which is at bottom the purpose of Title VII's deferral structure. *See ante* at 969. As a plurality of the Supreme Court observed in *Commercial Office Products,* Congress "clearly foresaw the possibility that States might decline to take advantage of the opportunity for enforcement afforded them by the deferral provisions. It therefore gave the EEOC the authority and responsibility to act when a State is 'unable' or 'unwilling.'" 486 U.S. at 118, 108 S.Ct. at 1673; *see also* 42 U.S.C. § 2000e–8(b) (authorizing EEOC to "enter into written agreements" with state and local agencies to promote "effective enforcement" of Title VII). Illinois is "unwilling to act"; *Sofferin* says that the state can express this unwillingness in a workshare agreement and cede its jurisdictional prerogative to the Commission. To hold that Illinois cannot categorically express its wishes in a worksharing agreement and must instead reiterate its policy in a manner that needlessly consumes time and resources in each individual case serves no important statutory purpose and contravenes Congress' desire in enacting the deferral provisions to "promote 'time economy and the expeditious handling of cases.'" 486 U.S. at 118, 108 S.Ct. at 1673 (quoting 110 Cong.Rec. 9790 (1964) (remarks of Sen. Dirksen)); *see also Green v. Los Angeles City Superintendent of Schools,* 883 F.2d 1472, 1479 (9th Cir.1989).

We therefore reverse the district court's dismissal of Ms. Hong's complaint and remand for further proceedings consistent with this opinion.