Gabe KAIMOWITZ, Plaintiff–Appellant,

v.

BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS and its Institute of Communications Research, Defendants–Appellees.

No. 90–3536.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1991.

Decided Dec. 23, 1991.

As Modified Jan. 3, 1992.

Gabe Kaimowitz, pro se.

John B. Alsterda (argued), Charles Palmer, Flynn, Palmer, Tague & Lietz, Champaign, Ill., for defendants-appellees.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Gabe Kaimowitz appeals the dismissal of his suit for monetary and declaratory relief against the Board of Trustees of the University of Illinois (University) and its Institute of Communications Research (Institute) brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and under 42 U.S.C. § 1983. We reverse the District Court's dismissal of the ADEA claim and remand for further proceedings, and affirm the dismissal of the § 1983 claim.

## I.

■ Gabe Kaimowitz twice applied for a position in the Institute's doctoral program, and twice was rejected. After corresponding with Institute representatives about their reasons for rejecting him, Kaimowitz filed a claim with the Equal Employment Opportunity Commission (EEOC), contending that the Institute denied him a position in the program—which he claims is the equivalent of an award of employment—because of his age. He did not, however, file a separate claim with the Illinois Department of Human Resources (IDHR), the agency responsible for overseeing employment discrimination complaints filed in Illinois.

Under ADEA and Title VII, plaintiffs in "deferral" states such as Illinois—*i.e.*, states which provide an administrative remedy for employment discrimination—may not file a discrimination charge with the EEOC until the charge is first filed with the appropriate state agency and either (1) 60 days has elapsed or (2) the state agency terminates its proceedings. 29 U.S.C. § 633(b); 42 U.S.C. § 2000e–5(c); *see Marlowe v. Bottarelli*, 938 F.2d 807, 809 (7th Cir.1991); *Overgard v. Cambridge Book Co.*, 858 F.2d 371, 374 (7th Cir.1988). In dismissing Kaimowitz's claim, the District

Court determined that Kaimowitz failed to exhaust state administrative remedies because he had not filed his claim with the IDHR before filing suit in federal court.

The District Court based its decision on *Hutsch v. Szabo Food Service Company*, 851 F.2d 999, 1003 (7th Cir.1988), in which this Court stated that a plaintiff "must at least initiate state proceedings as a condition precedent to filing a federal action based on ADEA." *Szabo*, however, did not involve, and thus did not address, the import of so-called "workshare agreements" on the filing process. Like many states, Illinois has chosen to participate with the EEOC in a workshare agreement, which apportions initial jurisdiction over discrimination complaints between the two agencies.[1] In Kaimowitz's case, Illinois' designated agent in the EEOC regional office determined that his claim was within the category of complaints over which the IDHR did not wish to exercise its right of initial processing, thus vesting jurisdiction over the claim in the EEOC. *See* Appendix Item 7. In October 1989, the EEOC sent Kaimowitz a letter informing him that its investigation of his claim was not yet complete, and reminding him that his right to sue under ADEA would expire in March 1990. Kaimowitz filed suit in District Court on March 1, 1990.

After the District Court dismissed the ADEA count without prejudice on the ground that Kaimowitz had failed to pursue state remedies before bringing the ADEA action, he filed a motion for reconsideration. Along with the motion, he attached copies of the workshare agreement and the transmittal form acknowledging that IDHR waived its right to process his claim. The court denied the motion, stating that these documents were "inconclusive" as to whether Kaimowitz had filed a charge with the IDHR as a condition precedent to filing his ADEA suit.

In *Hong v. Children's Memorial Hospital*, 936 F.2d 967 (7th Cir.1991), we held

---

1. We extensively discussed the operation of the IDHR–EEOC workshare agreement in *Hong v. Children's Memorial Hospital*, 936 F.2d 967 (7th Cir.1991), and *Sofferin v. American Airlines,* *Inc.,* 923 F.2d 552 (7th Cir.1991). *See also Marlowe v. Bottarelli,* 938 F.2d 807 (7th Cir.1991). Our opinion assumes familiarity with these decisions.

that "the workshare agreement can alone effect both initiation and termination of the state proceedings and that, as a result, plaintiffs may file with the EEOC without first filing with the IDHR." *Hong,* 936 F.2d at 971; *see also Marlowe,* 938 F.2d at 808, 814 (workshare agreement between IDHR and EEOC is "self-executing"— where IDHR waives exclusive right to process charges, filing of complaint with EEOC "work[s] instantaneous constructive termination of the state's jurisdiction over" the charges) (citations omitted). *Cf. Sofferin v. American Airlines,* 923 F.2d 552, 559 (7th Cir.1991) (worksharing agreements could lawfully "provide that a filing with the EEOC simultaneously initiates and terminates state proceedings."). *Hong* compels that we reverse the District Court's dismissal of Kaimowitz's ADEA claim. Kaimowitz filed a claim with the EEOC. Through the workshare agreement, the IDHR determined that it was "unwilling to act," *Hong,* 936 F.2d at 971, thereby "waiv[ing] its first dibs under the workshare agreement," *id.* at 969, and ceding its jurisdictional prerogative to the EEOC. *Id.* at 971. Because the workshare agreement provides for direct filing with the EEOC and both initiation and termination of the state's interests pursuant to a prearranged waiver, Kaimowitz was not required to physically file his complaint with the IDHR.

We find that Kaimowitz properly exhausted his state administrative remedies before filing suit in federal court, and reverse the dismissal of his ADEA claim and remand for further proceedings.[2]

## II.

Kaimowitz's § 1983 claim may be dispensed with in rather short order. He grounds his § 1983 claim on the allegation that the defendants violated his due process rights by failing to fully consider his qualifications. The District Court dismissed this claim on the ground that the University and its Institute do not constitute suable "persons" within the meaning of § 1983. We agree.

As the District Court observed, the Supreme Court in *Will v. Michigan Department of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989), held that "a State is not a person within the meaning of § 1983." In *Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351, 357 (7th Cir.1983), we held that the plaintiff was barred by the eleventh amendment from suing a state university for damages pursuant to § 1983 because state universities are "alter egos" of the state. *See also Kashani v. Purdue University,* 813 F.2d 843, 844 (7th Cir.) (in § 1983 action, state university "an arm of the state" entitled to eleventh amendment protection against claims for monetary damages), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987). Because this Court has determined in previous § 1983 actions that a state university is an alter ego of the state, and, under *Will,* a "State is not a person" under § 1983, it follows that a state university is not a person within the meaning of § 1983 and therefore not subject to suits brought under § 1983.

We find unpersuasive Kaimowitz's claim that *Will* suggested that the immunity afforded states does not extend to public universities when it cited *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 503, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982), a case involving a state university, for the proposition that "Congress assigned to the federal courts a paramount role" in protecting civil liberties. *Will,* 491 U.S. at 66, 109 S.Ct. at 2309. The mere fact that *Will* quotes from a case involving a state university does not mean that the Court intended to create an exception to the general rule that a state is not a person under § 1983. Indeed, the sentence immediately following the reference to *Patsy* states, "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for liti-

---

**2.** In remanding, we do not find meritorious Kaimowitz's contention that Judge Baker should have recused himself from this case because he attended and graduated from the University of Illinois and its law school and that, on remand, this case should be referred to a different judge.

gants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66, 109 S.Ct. at 2309. Moreover, the Court in *Patsy* did not even address the eleventh amendment immunity issue upon the express request of the defendant. *Patsy* specifically opened the door to an eleventh amendment objection, however, stating that "[n]othing in this opinion precludes the [defendant university] from raising its Eleventh Amendment claim on remand." *Patsy*, 457 U.S. at 516, 102 S.Ct. at 2568.

■ Kaimowitz also argues that the 1987 Civil Rights Restoration Act (1987 Act) strips the defendant here of any immunity for suits brought under § 1983. In the 1987 Act, Congress expressly waived state immunity for violations of certain specifically enumerated federal statutes and "provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d–7. Kaimowitz argues that § 1983 is sufficiently similar to the statutes enumerated in the 1987 Act to fall within its "catch-all" provision. We disagree. Section 1983 is a different creature than the three statutes listed in the 1987 Act (title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and title VI of the Civil Rights Act of 1964), each of which explicitly refers to discrimination *by recipients of federal financial assistance.* *See* 20 U.S.C. § 1681; 42 U.S.C. § 6101; *id.* § 2000d. Unlike these statutes, § 1983 does not specifically prohibit discrimination by recipients of federal financial assistance. Thus, we find the 1987 Act inapplicable here.

Because we conclude that Kaimowitz is not eligible for relief against the University or its representatives under § 1983, we affirm the District Court's dismissal of this claim.

### III.

For the reasons stated above, we RE-VERSE the dismissal of the ADEA claim and REMAND for further proceedings consistent with this opinion, and AFFIRM the dismissal of the § 1983 claim.