**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PATRICIA PURYEAR,
Plaintiff-Appellee,

v.

COUNTY OF ROANOKE,
Defendant-Appellant.

No. 99-2359

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS,
Amici Curiae.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-99-351)

Argued: May 4, 2000

Decided: June 13, 2000

Before WILKINS, MOTZ, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Wilkins and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Jim Harold Guynn, Jr., GUYNN & DILLON, P.C.,
Roanoke, Virginia, for Appellant. Jane Anne Harden, ARTHUR P.

STRICKLAND, P.C., Roanoke, Virginia, for Appellee. Julie Loraine Gantz, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae Commission. **ON BRIEF:** C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae Commission. Jeffrey G. Huvelle, Carolyn F. Corwin, Thomas W. Beimers, COVINGTON & BURLING, Washington, D.C., for Amicus Curiae Committee.

_____

**OPINION**

KING, Circuit Judge:

The County of Roanoke ("Roanoke") appeals the district court's order denying its motion to dismiss Patricia Puryear's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). In support of dismissal, Roanoke contends that Ms. Puryear failed to exhaust the administrative remedies available to her under Virginia state law, and that such failure deprives the district court of subject matter jurisdiction over her complaint. We reject Roanoke's contention, and we affirm the decision below.

I.

According to her complaint, Ms. Puryear was employed for approximately twenty-eight years in Roanoke's Office of Real Estate Assessments. Beginning in 1993 and continuing through 1997, she was subjected to unwelcome sexual propositions and inappropriate offensive touching by her supervisor. In 1996, based on allegations unrelated to her supervisor's sexual conduct, Ms. Puryear filed an age discrimination claim against Roanoke with the Equal Employment Opportunity Commission ("EEOC"). Shortly after resolution of her 1996 EEOC claim, Roanoke removed Ms. Puryear from her supervisory responsibilities, increased her work load, assigned her less desirable tasks, and refused to clarify ambiguities in her job description. She claims that these changes in her employment status constituted a

2

demotion and made it difficult for her to meet her employer's expectations. Ms. Puryear sought resolution of these ongoing problems with Roanoke, but after an internal investigation, Roanoke took no action.

On June 1, 1998, Ms. Puryear wrote the EEOC asserting retaliation and gender discrimination, setting forth in detail the facts supporting her assertions. Then, in July 1998, Ms. Puryear filed a formal charge against Roanoke with the EEOC on the agency's standard form. She attached to the formal EEOC charge a statement of the factual bases for her claims, expressly incorporated her June 1, 1998 letter to the EEOC, and stated her belief that she was being subjected to conduct that violated Title VII and the ADEA.

In August 1998, Ms. Puryear resigned from her position with Roanoke because her working conditions had deteriorated to an intolerable level. She then filed an amended charge with the EEOC, expanding her original allegations to include facts relating to her resignation and making a claim of constructive discharge in violation of Title VII and the ADEA. On February 17, 1999, the EEOC issued Ms. Puryear a right-to-sue letter. She thereafter filed her complaint against Roanoke in the Western District of Virginia, alleging sexual harassment and constructive discharge in violation of Title VII, and alleging retaliation in violation of the ADEA.

Roanoke moved the district court to dismiss Ms. Puryear's complaint, asserting that the court lacked subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Roanoke argued that Ms. Puryear had failed to exhaust the remedies available to her under state law, as mandated by section 706(c) of Title VII, 42 U.S.C. § 2000e-5(c), and that the EEOC's right-to-sue letter was therefore improperly issued. The district court denied Roanoke's motion to dismiss and certified an interlocutory appeal on whether Ms. Puryear had commenced proceedings under state law for purposes of section 706(c) of Title VII. We accepted Roanoke's interlocutory appeal and possess jurisdiction pursuant to 28 U.S.C. § 1292(b).

II.

We review de novo a district court's decision to deny a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

3

when the underlying facts are not in dispute. <u>Lone Star Steakhouse &</u> <u>Saloon, Inc. v. Alpha of Va., Inc.,</u> 43 F.3d 922, 929 n.9 (4th Cir. 1995) (citing <u>Richmond, Fredericksburg & Potomac R.R. v. United States,</u> 945 F.2d 765, 768-69 (4th Cir. 1991)). There is no factual dispute in this case, and Roanoke's assertion that the district court lacked subject matter jurisdiction rests entirely on its theory that Ms. Puryear failed to exhaust her state administrative remedies.

A.

Under section 706(c) of Title VII, a plaintiff must exhaust her administrative remedies prior to instituting a judicial action alleging employment discrimination. Section 706(c) provides, in pertinent part:

> In the case of an alleged unlawful employment practice occurring in a State . . . which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . no charge may be filed . . . by the person aggrieved before the expiration of sixty days after <u>proceedings have been commenced under the State or local law,</u> unless such proceedings have been earlier terminated.

42 U.S.C. § 2000e-5(c) (emphasis added).[1] It is clear that the statutes of Virginia prohibit the unlawful employment practices of gender and age discrimination alleged by Ms. Puryear. <u>See</u> Va. Code § 2.1-716 ("unlawful discriminatory practice" includes conduct violating any Virginia or federal statute governing gender or age discrimination). Additionally, the Virginia Council on Human Rights ("VCHR") is a state authority authorized to grant or seek relief from unlawful employment practices and constitutes a "deferral agency" for section

---

[1] For simplicity, our analysis is based on Title VII's provisions. However, the analysis is equally applicable to ADEA charges. <u>See</u> 29 U.S.C. § 633(b) (comparable requirement for actions under the ADEA); <u>EEOC</u> <u>v. Commercial Office Prod. Co.,</u> 486 U.S. 107, 123-24 (1988) (Title VII and ADEA filing provisions are "virtually in haec verba.") (citing <u>Oscar Mayer & Co. v. Evans</u>, 441 U.S. 750, 755 (1979)).

4

706(c) purposes.**2** <u>See Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 440 (4th Cir. 1998). Therefore, in a state that has such a deferral agency, <u>i.e.</u>, a "deferral state," such as the Commonwealth of Virginia, Title VII requires exhaustion of state and federal administrative remedies prior to a judicial remedy being sought.

The purpose of the presumptive sixty-day deferral period in a deferral state is comity -- to provide states and localities the first opportunity to combat discrimination, free from premature federal intervention. <u>See Love v. Pullman Co.</u>, 404 U.S. 522, 526 (1972) (stating that the purposes of the deferral provisions are "to give state agencies a prior opportunity to consider discrimination complaints" and "to ensure expedition in the filing and handling of those complaints"); <u>EEOC v. Techalloy Maryland, Inc.</u>, 894 F.2d 676, 677 (4th Cir. 1990) (citing <u>EEOC v. Commercial Office Prod. Co.</u>, 486 U.S. 107, 110-11 (1988)). If a charge of unlawful employment practices (a "charge") is first filed with the EEOC, the EEOC may retain the charge in "suspended animation" during the state agency's period of exclusive jurisdiction, and upon termination of the state agency's proceedings, the "suspended" charge is deemed filed with the EEOC.**3** <u>See Commercial Office Prod.</u>, 486 U.S. at 111-12. By entering into what is known as a "worksharing agreement" with the EEOC, a state may elect to waive its period of exclusive jurisdiction during the deferral period, while retaining concurrent jurisdiction over the discrimination charges. <u>See id.</u>, 486 U.S. at 117 (plurality). A state's waiver of its right to initially process a charge thus constitutes a "termination" of its proceedings for purposes of section 706(c). <u>See id.</u>, 486 U.S. at 114-15.

After a charge is properly filed with the EEOC, the aggrieved per-

_____

**2** A "deferral agency" is a state or local authority authorized to grant or seek relief from unlawful employment practices prohibited by state or local law, for purposes of Title VII's section 706(c). <u>See Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 440 (4th Cir. 1998).
**3** Under Title VII, a "charge" filed with the EEOC by a person aggrieved by an unlawful employment practice "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b); <u>see also</u> 29 C.F.R. 1601.12 (requirements for contents of Title VII charge); 29 C.F.R. 1626.8 (requirement for contents of ADEA charge).

son may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter. See 42 U.S.C. § 2000e-5(f)(1) (Title VII exhaustion of federal remedies); cf. 29 U.S.C. § 626 (aggrieved person may bring a civil action based on ADEA sixty days after filing EEOC charge).

B.

Roanoke contends that Ms. Puryear failed to exhaust her state administrative remedies here. It asserts that she failed to "commence" any proceedings under state or local law for purposes of Title VII and the ADEA, in that Ms. Puryear only filed her charge with the EEOC. However, when the EEOC accepted Ms. Puryear's charge in 1998, the worksharing agreement ("WSA") between the EEOC and VCHR had been entered into by those agencies and had been fully implemented. Indeed, Ms. Puryear's July 1998 EEOC charge, and its August 1998 amendment, were addressed to both agencies. Roanoke argues that the inter-agency cooperation implemented by the WSA is fatally flawed, notwithstanding Ms. Puryear's compliance with the requirements of those agencies.[4]

1.

First of all, Congress empowered the EEOC to enter into worksharing agreements. See 42 U.S.C. §§ 2000e-4(g)(1) (The EEOC "shall have power to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals."), 2000e-8(b) (The EEOC "may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall . . . relieve any person or class of persons in such State or locality from requirements

_____

[4] Some EEOC forms offer a complainant the opportunity to check a box next to the statement, "I want this charge filed with both the EEOC and the State or local agency, if any. . . ." See Nash v. D.S. Nash Constr. Co., 70 F. Supp. 2d 639, 641 (W.D. Va. 1999). Whether this box is checked is irrelevant, however, because the EEOC forwards the charge to the VCHR in any event, pursuant to the WSA. See id. at 643; see also Worthington v. Union Pacific R.R., 948 F.2d 477, 479-80 (8th Cir. 1991) (same, with respect to Nebraska agency).

6

imposed under this section."). In order to fully understand and analyze Roanoke's contention that the WSA is fatally flawed, we must evaluate the structure and operation of the WSA.

The WSA establishes streamlined procedures between the two agencies for managing claims.[5] Significantly, it designates each agency as the other's "agent for the purpose of receiving and drafting charges" of discrimination. J.A. 31-32. Under the terms of the WSA, a claim received by one agency is deemed received by the other, initiating each agency's proceedings for purposes of Title VII, section 706(c). Id., see also Bolinsky v. Carter Mach. Co., 69 F. Supp. 2d 842, 845-46 (W.D. Va. 1999) (Jones, J.). The WSA further provides that each agency will process the Title VII and ADEA charges it originally receives.

For charges originally received by the EEOC, the WSA provides that the VCHR "waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." Thus, under the express terms of the WSA, a plaintiff, by filing charges with the EEOC, thereby commences proceedings with both the VCHR and the EEOC.

2.

In support of its position here, Roanoke maintains that the provi-

_____

[5] In recognition of the common jurisdiction and goals of the VCHR and the EEOC, the WSA states that it is "designed to provide individuals with an efficient procedure for obtaining redress for their [employment discrimination] grievances" under Virginia and federal law. The WSA sets out each agency's jurisdiction; describes interagency procedures for the filing of charges, division of initial charge-processing responsibilities, exchange of information, and resolution of charges; and establishes the overarching administrative structure for implementation of the WSA.

The EEOC-VCHR cooperative arrangement pursuant to WSAs is longstanding. See, e.g., Smith v. Center Ford, Inc., 71 F. Supp. 2d 530 (E.D. Va. 1999), appeal docketed, No. 00-1137 (4th Cir. Feb. 7, 2000), see also Virginia Council on Human Rights (visited May 24, 2000) <http://www.chr.state.va.us/workshare.html>.

sions of the WSA are legally insufficient to "commence" state agency proceedings for Title VII purposes. It contends that the only lawful way to comply with Title VII's requirements is for the VCHR itself to affirmatively attempt to resolve the unlawful employment practice claim by application of the remedies available to it. Roanoke principally relies on the text of section 706(c) of Title VII, and on our decision in Davis v. North Carolina Dep't of Correction, 48 F.3d 134 (4th Cir. 1995). We find neither of these authorities to be controlling or persuasive.

First, our decision in Davis is readily distinguishable, as a WSA's waiver provision was not at issue there. In Davis, the state agency neither pursued a remedy under state law nor terminated its proceedings, as required for exhaustion of state remedies under Title VII. See Davis, 48 F.3d at 141 (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 469 (1982) (the EEOC may not actively process a charge "until the state remedy has been invoked and at least 60 days have passed, or the state proceedings have terminated.")). The plaintiff in Davis insisted that he had brought only a Title VII claim, and the state agency addressed only that claim, notwithstanding the conceded applicability of state discrimination laws. See Davis, 48 F.3d at 141 (we found "this case to be something of an aberration"). For that reason, we concluded that proceedings "under State or local law" had never been commenced for section 706(c) purposes. Here, however, unlike in Davis, neither Ms. Puryear nor the VCHR disavowed state law claims, and thus there was no section 706(c) deficiency in the state agency's process. Second, Roanoke's textual argument regarding section 706(c), i.e., that "commence" requires affirmative action and precludes waiver, is at odds with the deference we must accord an agency's interpretation of its governing statute. It is also contrary to the weight of authority, and is undercut by the policies supporting use of WSAs by agencies responsible for enforcement of anti-discrimination laws.

a.

Roanoke's position that the WSA's provisions are legally insufficient necessarily relies on our making a determination that the statutory deferral provision is ambiguous. And if so, EEOC's interpretation of its governing statute, if reasonable, is entitled to def-

8

erence. See Commercial Office Prod., 486 U.S. at 115 (citing Oscar Mayer, 441 U.S. at 761); Tinsley, 155 F.3d at 441.

We find it compelling that the VCHR and the EEOC have considered the requirements of section 706(c) and have elected to fulfill those requirements by relying on each other in various ways. Both agencies understand the waiver provision in the WSA to satisfy the requirements of Title VII, section 706(c).6 The provisions of the WSA demonstrate the choice and effort made by both agencies to "provide individuals with an efficient procedure" for obtaining redress to their grievances.7 Thus, the state's waiver provision is entirely consistent with the remedial nature of Title VII, in that it promotes the efficient handling of cases. See Commercial Office Prod. , 486 U.S. at 118-19 (plurality) (rejecting a construction of the deferral provision that would result in extraordinary inefficiency without furthering any other goal of the Act); Techalloy, 894 F.2d at 679 (rejecting a work-sharing agreement interpretation that is contrary to the WSA's purposes of minimizing red tape and expediting the processing of discrimination charges).8

_____

6 The WSA provides that the EEOC's receipt of charges on behalf of the VCHR "automatically initiates the proceedings of both the EEOC and the [VCHR] for the purposes of Section 706(c) and (e)(1) of Title VII." J.A. 32.

7 During the five-year period from 1981 through 1985, Virginia citizens filed over 2,600 discrimination complaints per year. See Commonwealth of Va. Report of the Human Rights Study Comm., House Doc. No. 34, at 9 (1987). The VCHR currently consists of nine Council members and only seven staff members. See Virginia Council on Human Rights (visited May 24, 2000) <http://www.chr.state.va.us/board.html> and <http://www.chr.state.va.us/staff.html>.

8 Roanoke contends that by entering into the WSA, the VCHR attempts to evade its obligation to affirmatively investigate and seek remedy to each charge filed with the VCHR. We reject this view, and instead accept the position of the Supreme Court that deferral is a voluntary undertaking that affords Virginia an opportunity to act, but does not penalize its election not to do so. See Commercial Office Prod. , 486 U.S. at 118-19 (plurality). Nor does deferral require pointless administrative processing that would create an enormous backlog of discrimination charges. See id.

9

According to the VCHR, an individual may file a VCHR complaint by filing a "Charge of Discrimination" with the EEOC at the EEOC's office. J.A. 43 (Declaration of Ms. Norman, the VCHR's liaison with the EEOC) ("All information received by the EEOC as VCHR's agent is deemed to have been received by the VCHR," and"[o]ne method of filing a complaint with the VCHR is to go to the EEOC office and complete [the charge form].");[9] cf. Petrelle v. Weirton Steel Corp., 953 F.2d 148, 152-53 (4th Cir. 1991) (EEOC's receipt of charge did not commence state proceeding, where state agency interpreted the worksharing agreement to require the EEOC to transmit the charge to the state agency to commence state proceedings). The EEOC plainly agrees with the VCHR. It has supported the VCHR's position in its amicus brief and oral argument in this appeal, and has taken a consistent position in other cases. See infra Section II.B.2.b. Also, the EEOC's issuance of a right-to-sue notice after Ms. Puryear filed her EEOC charge demonstrates that its interpretation of the WSA is consistent with that of the VCHR.

Under these circumstances, we must conclude that the WSA arrangement between the EEOC and the VCHR is reasonable, is plainly authorized, see 42 U.S.C. § 2000e-8(b) ("[written] agreements [between the EEOC and state agencies] may include provisions under

_____

[9] The district courts in Virginia have uniformly construed the WSA and § 706(c) in a manner consistent with our decision today, and have developed a comprehensive factual record of the VCHR's worksharing operations. See, e.g., Flippo v. American Home Prod. Corp., 59 F. Supp. 2d 572, 578 (E.D. Va. 1999) (Richard L. Williams, J.); Bolinsky v. Carter Mach. Co., 69 F. Supp. 2d 842, 847 (W.D. Va. 1999) (Jones, J.); Nash v. D.S. Nash Constr. Co., 70 F. Supp. 2d 639, 643 (W.D. Va. 1999) (Moon, J.); Barrett v. Applied Radiant Energy Corp., 70 F. Supp. 2d 644, 649 (W.D. Va. 1999) (Moon, J.); Center Ford, 71 F. Supp. 2d at 537 (Friedman, J.) (incorporating into the record discovery documents from consolidated cases before Judge Payne in Dew v. Nabisco, Inc., Nos. 3:99cv353, 3:99cv117, 3:99cv188 (E.D. Va. Oct. 4, 1999)); Morris v. Waste Management of Va., Inc., 71 F. Supp. 2d 537, 542-43 (E.D. Va. 1999) (Friedman, J.); Grimes v. Canadian Amer. Transp., C.A.T., 72 F. Supp. 2d 629, 632 (W.D. Va. 1999) (Kiser, J.); Walker v. Electrolux Corp., 55 F. Supp. 2d 501, 503 (W.D. Va. 1999) (Glen M. Williams, J.). See also Harris v. TJX Cos., 60 F. Supp. 2d 562, 565 (W.D. Va. 1999) (Crigler, Mag. J.).

which the [EEOC] shall . . . relieve any person or class of persons in such State or locality from requirements imposed under this section."); Va. Code Ann. § 2.1-720(5) (The VCHR has the power "to enter into cooperative worksharing or other agreements with federal agencies or local commissions, including the deferral of complaints of discrimination to federal agencies."), serves the goals of the federal legislation, and deserves our deference. See Techalloy, 894 F.2d at 678-79 ("[D]eference is due [the] EEOC's reasonable interpretation of when state proceedings are commenced and terminated under § 706(c), (e) of [Title VII]."). We therefore agree that the WSA's self-executing operation upon the filing of a complaint with the EEOC complies with Title VII's requirements for the commencement of proceedings under state or local law.

b.

Our sister circuits also agree with our position here, as demonstrated by their interpretations of analogous worksharing agreements between federal and state agencies. See, e.g., Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 879-80 (3d Cir. 1990) (concluding that where WSA entitled plaintiff to file her charge only with the EEOC, giving her the benefit of her EEOC filing favors upholding her right to proceed before the court and does not sacrifice any significant rights of the employer or the state agency); Griffin v. City of Dallas, 26 F.3d 610, 612-13 (5th Cir. 1994) (state proceedings instituted for purposes of § 706(c), (e) when EEOC received the complaint, based on WSA designating the EEOC as the state agency's agent for purposes of receiving charges, with state's waiver of its exclusive jurisdiction period); Worthington v. Union Pacific R.R., 948 F.2d 477, 482 (8th Cir. 1991) (EEOC constructively received the charge on the day it was filed with a state agency, by WSA's provisions that agencies acted as each others' agents, with self-executing waiver of exclusive state proceedings); Sofferin v. American Airlines, Inc., 923 F.2d 552, 556-59 (7th Cir. 1991) (holding that under a worksharing agreement with a self-executing waiver, a filing with the EEOC simultaneously initiates and terminates state proceedings); Marlowe v. Bottarelli, 938 F.2d 807, 814 (7th Cir. 1991) (same); Green v. Los Angeles County Superintendent of Sch., 883 F.2d 1472, 1479-80 (9th Cir. 1989) (a filing with state agency deemed to be a filing with EEOC, by the self-executing clause of the worksharing agreement); Griffin v. Air Prods.

11

& Chems., Inc., 883 F.2d 940, 943 (11th Cir. 1989) (worksharing agreement between EEOC and state agency created an instantaneous "constructive termination" of state agency's proceedings).

These decisions emphasize that the purpose of Title VII's deferral structure is to facilitate the state's wishes. See also Hong v. Children's Mem'l Hosp., 936 F.2d 967, 971 (7th Cir. 1991). Congress "clearly foresaw the possibility that States might decline to take advantage of the opportunity for enforcement afforded them by the deferral provision." Id. (citing Commercial Office Prod., 486 U.S. at 118 (plurality), and referring to 42 U.S.C. § 2000e-8(b)). "It therefore gave the EEOC the authority and responsibility to act when a State is `unable' or `unwilling to act.'" Id. We must therefore reject Roanoke's contention that only an investigation by VCHR staff, and not by agents of the VCHR, could comply with Title VII's deferral provision requiring that Ms. Puryear commence proceedings under state or local law.**10**

C.

Roanoke also contends that Ms. Puryear failed to adequately allege violations of state law in the charge she filed with the EEOC. In support of this point, Roanoke again relies on our decision in Davis.**11**

_____

**10** We find further support in Commercial Office Products for our conclusion that a charge filed with the EEOC commences proceedings under state law. In that case, the Court held that a state agency's waiver pursuant to its EEOC worksharing agreement exhausted state administrative remedies and preserved federal claims for Title VII purposes, even when the charge was untimely filed with respect to state law. See Commercial Office Prod., 486 U.S. at 124. Thus, even in circumstances where there is no possibility of a "live" state claim, the mere past existence of one, combined with a self-executing waiver by the state agency, maintains the plaintiff's right to pursue her federal claims. Our conclusion today is also entirely consistent with Title VII's remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process. See Commercial Office Prod., 486 U.S. at 124.

**11** We depart from our general rule that prohibits a published opinion from referring to an unpublished disposition, see Local Rule 36(c), only to dispose of Roanoke's attempt to rely on Dodge v. Philip Morris, Inc., No. 98-1968 (4th Cir. Mar. 25, 1999) (per curiam). Such reliance is misplaced, as that decision has no value beyond the facts of that case.

12

However, Davis provides no help to Roanoke on this issue of pleading requirements.

Ms. Puryear's EEOC charge set forth detailed factual allegations of the conduct that she believed was unlawful discrimination. "[A] written statement which identifies the parties and describes generally the action or practices complained of" is sufficient to commence proceedings with the VCHR. 22 Va. Admin. Code 25-10-50(B); see also J.A. 44 (Declaration of Ms. Norman) ("a brief factual statement disclosing the type of discrimination alleged and identifying the employer is sufficient. From such a statement, [the VCHR] determine[s] which state or federal statutes or regulations are likely to be implicated."). The EEOC agrees that no more is necessary to commence proceedings under state or local law. See also supra note 3. Nothing found in the terms of the WSA requires a specific citation to state law.[12] Because Title VII and the Virginia Human Rights Act are remedial statutes, courts must construe the legislation broadly to effect its purposes. See Tcherepnin v. Knight, 389 U.S. 332, 336 (1967); Va. Code Ann. § 2.1-717 (the provisions of the Virginia Human Rights Act "shall be construed liberally for accomplishments of the policies herein").[13]

Thus, to commence proceedings under Virginia law, a claimant need only make a sufficient allegation of discrimination in her statement of facts. We therefore reject Roanoke's contention that Ms. Puryear's EEOC charge did not commence proceedings under state law.

III.

Pursuant to the foregoing, we conclude that Ms. Puryear's unlawful employment practice charge filed with the EEOC commenced pro-

_____

[12] These agencies' interpretation of the pleading requirement is reasonable and we give deference to it. See Techalloy , 894 at 678-79.
[13] Moreover, Virginia law explicitly incorporates federal anti-discrimination law. Conduct "which violates any Virginia or federal statute or regulation governing discrimination on the basis of . . . [sex or age] . . . shall be an `unlawful discriminatory practice' for purposes of [the Virginia Human Rights Act]." Va. Code Ann. § 2.1-716. Thus, Ms. Puryear's explicit identification of federal law violations also identified a violation of state law.

13

ceedings under state law for purposes of section 706(c) of Title VII.[14] The decision of the district court, <u>Puryear v. County of Roanoke</u>, 71 F.Supp. 2d 551 (W.D. Va. 1999), is therefore affirmed.

<u>AFFIRMED</u>

_____

**14** Our decision today applies equally to the ADEA claim of Ms. Puryear. <u>See supra</u> note 1.

14