[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-12881

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JULY 12, 2001**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 98-00022-CIV-OC-10C

DONALD C. MAYNARD,

　　　　　　　　　　　　Plaintiff-Appellant,

versus

PNEUMATIC PRODUCTS
CORP.,

　　　　　　　　　　　　Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 12, 2001)**

Before TJOFLAT, WILSON and FLETCHER*, Circuit Judges.

_____

*Honorable Betty B. Fletcher, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

Upon *sua sponte* reconsideration of this appeal, we vacate our prior opinion, published at 233 F.3d 1344 (11th Cir. 2000), and the opinion set forth below is substituted in its place.

Donald C. Maynard appeals the district court's grant of judgment as a matter of law to Pneumatic Products Corporation ("Pneumatic"). The grant was predicated upon the finding that Maynard failed to prove that he timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Because we find that the district court was correct in concluding that the discrimination charge was not timely filed, we affirm the district court's grant of judgment to Pneumatic.

## I. BACKGROUND

Pneumatic Products Corporation ("Pneumatic") hired Donald Maynard in 1991 as an assembly line worker on Pneumatic's filter product line.[1] In 1994, Maynard sustained an on-the-job back injury in which he herniated a disc in his back, and by March of 1996, as a result of the herniated disc, Maynard could not lift more than fourteen pounds, sleep sufficiently (due to severe back pain), sit in a

---

[1]Maynard went on to work for Pneumatic in several capacities, but for sake of brevity and clarity we summarize his positions as "assembly line worker."

chair for more than fifteen to twenty minutes at a time, stand for more than ten to fifteen minutes at a time, bend at the waist, run up steps, or walk more than forty to fifty yards at a time. Pneumatic knew about Maynard's back condition, and the limitations caused by his condition.

Pneumatic terminated Maynard's employment on March 22, 1996. Pneumatic purported to fire Maynard because it was discontinuing the product line on which Maynard worked, but Maynard contended that Pneumatic actually fired him "because of [his] back." Maynard submitted an affidavit to the EEOC 292 days after his termination, claiming that Pneumatic violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, by firing him because of a disability (his back condition).[2] In response, the EEOC sent Maynard a letter on January 15, 1997 advising him that he needed to complete the enclosed Form 5 documentation and should return it within five days. (Court Exh. 2). After receiving his right to sue letter, Maynard sued Pneumatic for violations of the ADA and the Florida Civil Rights Act, Fla. Stat. ch. 760.01 *et seq.* (1997). Prior to trial,

---

[2]The evidence of the claim being initiated 292 days after his termination on January 8, 1997 takes two forms. In opposition to appellee's motion for summary judgment, Maynard attached his affidavit as proof that his claim was timely filed, (Tab 14), and in the EEOC's notice to the Florida Commission on Human Relations that the EEOC is investigating the matter pursuant to the worksharing agreement between the two, they acknowledge the date of receipt of the charge as January 8, 1997. *See* EEOC Form 212, March 10, 1997 (Tab 10, Exh. D).

Pneumatic at various times raised motions to dismiss and for summary judgment, all were denied.[3]

Maynard's claim proceeded to a jury trial, and the district court granted Pneumatic's motion for a directed verdict following the presentation of plaintiff's case. The district court relied on the fact that Maynard's EEOC charge was not timely filed, hence his claims were time barred. Alternatively, the court stated that Maynard failed to establish that he had a disability within the meaning of the ADA. Maynard appeals both rulings.

## II. DISCUSSION

We review *de novo* the district court's grant of judgment as a matter of law, and view all evidence in the light most favorable to Maynard, the non-movant. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).

Assuming without deciding, as the district court initially did, that Maynard made out a prima facie case of disability, we only address an issue we declined to

---

[3]It should be noted that Pneumatic continuously contested the timeliness of Maynard's filing. Maynard asserted in his initial complaint that he had filed a claim with the FCHR on November 26, 1996. *See* Complaint and Demand for Jury Trial, January 26, 1998, ¶ 11 (Tab 1). Pneumatic's answer concluded that they were "without knowledge and therefore denied" Maynard's assertion on this point. *See* Defendant's Answer and Affirmative Defenses, March 10, 1998, at 2 (Tab 5). Pneumatic further asserted as its third affirmative defense that Maynard failed to meet a condition precedent for filing an ADA based action. *Id.* at 3. Based in part on the timeliness issue, Pneumatic filed a motion for summary judgment, which was denied by the court. *See* Defendant's Motion for Summary Judgment, October 13, 1998, ¶ 6, at 2-3 (Tab 10). After quite a bit of back and forth between the parties to the case and some initial confusion about the documentation and dates, the district court denied the motion.

reach in our original opinion – whether Maynard timely filed his charge with the EEOC. Timely filing a charge of discrimination is a prerequisite to bringing suit under both Title VII and the ADA. *See* Section 706(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e) (1994); 42 U.S.C. § 12117(a); *Love v. Pullman*, 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964 . . . may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief."); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964."). An ADA plaintiff has the burden of proving all conditions precedent to filing suit, including the condition that he timely filed with the EEOC. *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1011 (11th Cir. 1982) ("[T]he timely filing of an EEOC complaint is a condition precedent to a Title VII action").

Ordinarily, an ADA plaintiff must file a charge complaining about an allegedly unlawful employment practice (the "charge") with the EEOC within 180 days of the employment practice, *see* 42 U.S.C. § 2000e-5(e)(1) (1994), but the period for filing a charge with the EEOC may be extended to 300 days if the

5

complainant first files a timely charge in a state or local agency in a "deferral state." *Id*. Deferral states are those that prohibit the unlawful employment practice at issue and have established state or local authorities to grant or seek relief for such practice. *See* Section 706(c) of Title VII, 42 U.S.C. § 2000e-5(c); 42 U.S.C. § 2000e-(e)(1). In deferral states, "no charge may be filed [with the EEOC]. . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . ." 42 U.S.C. § 2000e-5(c). This gives the deferral state agencies notice of the alleged discrimination and an opportunity to investigate the allegations before the federal agency gets involved. *See EEOC v. Commercial Office Prod. Co.*, 486 U.S. 107, 110 (1988) (The sixty-day deferral period was included in § 706(c) "to give States and localities an opportunity to combat discrimination free from premature federal intervention . . . ). Thus, in deferral states, either a complainant must file with the state agency by the 240th day after the discriminatory act, or the state agency must terminate proceedings by the 300th day on a charge filed after the 240th day. *See Mohasco Corp. v. Silver*, 447 U.S. 807 (1980).

Deferral states may also enter into worksharing agreements with the EEOC, whereby the deferral states waive the right to investigate a charge during the sixty-

6

day deferral period. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 2000e-8(b). The deferral state's waiver of the opportunity to investigate during the sixty-day deferral period may constitute a termination of the state's proceedings, *see Commercial Office Prod.*, 486 U.S. at 125, thereby making a charge filed after the 240th day timely by virtue of the deferral state's termination of its proceedings before the 300th day.

Maynard filed his charge of discrimination in Florida, a deferral state, but he never filed a charge with Florida's state agency, the Florida Commission on Human Relations ("FCHR"); he instead alleges that he filed his charge directly with the EEOC, 292 days after Pneumatic terminated him. Maynard's awkward filing left him with two important hurdles to jump before he could be deemed to have timely filed his EEOC charge; first, to be entitled to the 300-day filing period, as opposed to the usual 180-day period (which, importantly, he missed), Maynard needed to prove that he filed his charge with the FCHR before the 300th day following his termination. Second, since he filed more than 240 days after his termination, he needed to prove that the FCHR terminated its proceedings on his filing before the 300th day following his termination. To determine whether Maynard's EEOC filing constituted a filing with the FCHR, and whether the

7

FCHR terminated its proceedings before the 300th day, we would, ordinarily, look to the EEOC-FCHR worksharing agreement.

The agreement's language would determine whether Maynard's filing with the EEOC constituted a simultaneous filing with the FCHR. *See, e.g., Puryear v. County of Roanoke*, 214 F.3d 514, 519 (4th Cir. 2000) (quotation marks omitted) (citing *Bolinsky v. Carter Mach. Co.*, 69 F. Supp. 2d 842, 845-46 (W.D. Va. 1999)) ("The [worksharing agreement] establishes streamlined procedures between the two agencies for managing claims. Significantly, it designates each agency as the other's agent for purpose of receiving and drafting charges of discrimination. Under the terms of the [worksharing agreement], a claim received by one agency is deemed received by the other, initiating each agency's proceedings for purposes of Title VII, section 706(c). The [worksharing agreement] further provides that each agency will process the Title VII and ADEA charges it originally receives. . . . Thus, under the express terms of the [worksharing agreement], a plaintiff, by filing charges with the EEOC, thereby commences proceedings with both the [state agency] and the EEOC."); *Bolinsky*, 69 F. Supp. 2d at 847 ("[B]ecause the plaintiff's filing with the EEOC automatically commenced and terminated the state proceedings on his charge, his filing with the EEOC was a sufficient exhaustion of his state law remedies.").

The agreement's language also would determine whether the FCHR constructively terminated Maynard's filing. *See, e.g., Griffin v. Air Prod. & Chems., Inc.*, 883 F.2d 940, 943 (11th Cir. 1989) (examining an earlier version of the EEOC-FCHR worksharing agreement, and determining that "the EEOC-FCHR worksharing agreement created an instantaneous 'constructive termination'" of the FCHR proceedings); *Puryear*, 214 F.3d at 518 n.4 (finding that the state agency constructively terminated a charge that was filed with the EEOC where "the EEOC forwards the charge to the [Virginia Council on Human Rights] in any event, pursuant to the [worksharing agreement]."); *Griffin v. City of Dallas*, 26 F.3d 610, 613 (5th Cir. 1994) (reviewing the Texas Commission on Human Rights -EEOC worksharing agreement, and determining that pursuant to that agreement "the state proceedings were instantaneously terminated upon [the complainant's] filing of his charge with the EEOC."). Since the outcome of our query hinges on the language in the EEOC-FCHR agreement, we begin our analysis by scrutinizing the agreement for fiscal year 1997, the governing agreement when charges were filed.

Unfortunately, neither party to this appeal made the crucial EEOC-FCHR worksharing agreement a part of the record. Maynard could only demonstrate timely filing if he showed that the EEOC-FCHR worksharing agreement provides that the EEOC is the FCHR's agent for purposes of receiving complaints, and that

9

the FCHR constructively terminates its proceedings when the EEOC receives a charge filed during the deferral period. As stated earlier, an ADA plaintiff bears the burden of proving that he timely filed his charge with the EEOC; Maynard did not sustain this burden of proof, as he failed to enter the necessary EEOC-FCHR worksharing agreement into the record. Therefore, the district court appropriately granted judgment as a matter of law in Pneumatic's favor.

## III. CONCLUSION

Our prior opinion is vacated in its entirety and we limit our holding in this case to deciding that Donald Maynard failed to prove that he timely filed his EEOC charge. Accordingly, we affirm the district court's grant of judgment as a matter of law to Pneumatic Products Corporation. Because we conclude that the lack of timely filing is a sufficient basis upon which to affirm the district court's decision, we need not address any alternative basis for the grant.

**AFFIRMED.**

10

B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. Under the terms of the Worksharing Agreement (agreement) between the Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR), Donald Maynard timely filed his discrimination complaint against his former employer, Pneumatic Products Corporation. At trial, Maynard made out his prima facie case. For these reasons, I would reverse the district court's grant of judgment as a matter of law to Pneumatic Products and remand.

## A. Timeliness

As the majority makes clear, whether Maynard timely filed his discrimination charge depends upon the terms of the Worksharing Agreement between the EEOC and the FCHR. The majority upholds the district court's judgment as a matter of law to Pneumatic Products because neither party made the agreement part of the record. The agreement creates rules of law that prescribe the circumstances under which filing with one agency constitutes filing with the other. Thus, the fact that the agreement was not entered into the record is irrelevant; it is the district court's duty to identify and interpret the sources of law necessary for deciding the case before it.

It is clear, however, that even if the agreement is an adjudicative fact rather than law, it is the sort of thing of which the district court could have taken judicial notice. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). Although judicial notice is not mandatory unless it is requested by a party who supplies the court with the necessary information, a court's failure to take judicial notice may constitute an abuse of discretion even when no party requests such notice. *See id*. 201(c), (d). In this case, whether Maynard's charges were timely filed depends entirely on the language of the agreement, a document that is readily available either from the FCHR or from the Florida divisions of the EEOC. I would hold that, assuming that the agreement is an adjudicative fact, the district court's failure to take judicial notice of the agreement was an abuse of discretion.

Turning to the merits of Maynard's appeal, it is clear from the agreement that the EEOC's receipt of a complainant's charges automatically initiates proceedings of *both* the EEOC and the FCHR. Paragraph II.A. of the agreement states that each agency designates the other "as its agent for the purpose of

12

*receiving* and drafting charges." FCHR-EEOC Worksharing Agreement for Fiscal Year 1997 ¶ II.A. (emphasis added). That paragraph also explicitly states that "EEOC's *receipt of charges* on the FEPA's[1] behalf will automatically initiate the proceedings of both EEOC and the FEPA." *Id.* ¶ II.A. (emphasis added). The agreement also conclusively establishes that Maynard's filing with the EEOC not only automatically initiated proceedings with the FCHR, but also instantaneously constructively terminated the FCHR proceedings. Paragraph III.A.1. of the agreement states that "[f]or charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." *Id.* ¶ III.A.I. This Court has held that virtually identical language in a previous Worksharing Agreement between the EEOC and the FCHR "created an instantaneous 'constructive termination'" of FCHR proceedings. *Griffin v. Air Prods. & Chems., Inc.*, 883 F.2d 940, 943 (11th Cir. 1989).

Here, the EEOC received Maynard's charges within the 300 day limit. FCHR proceedings were automatically initiated and terminated concurrent with Maynard's filing. The EEOC properly considered Maynard's filing timely; it

---

1        The FCHR refers to itself as "FEPA" in the agreement.

13

accepted jurisdiction and issued a right-to-sue letter. I would reverse the district court's conclusion that Maynard had failed to establish timely filing.

### B. Prima Facie Case

In our prior opinion, we affirmed the district court's judgment to Pneumatic Products on the ground that Maynard had failed to make out a prima facie case of discrimination in violation of the ADA. *Maynard v. Pneumatic Prods. Corp.*, 233 F.3d 1344 (11th Cir. 2000). In doing so, we erred.

In order to determine whether a person is disabled within the meaning of the ADA, we must decide three issues: (1) whether the person has a physical impairment, (2) whether the activities the person claims are substantially limited by the impairment are "major life activit[ies]," and (3) whether the impairment actually does substantially limit any major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

In 1994, Maynard suffered a herniated disc in his back while at work. By March of 1996, as a result of the herniated disk, Maynard could not lift more than fourteen pounds, sleep well, sit in a chair for more than fifteen to twenty minutes at a time, stand for more than fifteen minutes at a time, bend at the waist, run up steps, or walk more than forty or fifty yards at a time. Previously, we held that Maynard failed to establish his prima facie case because he failed to present

14

evidence of how far the average person in the population can walk. *Maynard,* 233 F.3d at 1347–48. That conclusion was simply wrong. Although Maynard offered no proof of how far the average person in the general population can walk, his impairment is so obviously substantially limiting that he needed to present no comparator evidence as part of his prima facie case. The jury's good common sense and life experiences gave them sufficient ability to determine that Maynard's impairment "[s]ignificantly restrict[s]. . . the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).

Maynard timely filed his charges with the EEOC and the FCHR. At trial, he made out his prima facie case of discrimination in violation of the ADA. Therefore, I would reverse the district court's grant of judgment as a matter of law to Pneumatic Products and remand for retrial. Accordingly, I dissent.