PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 22 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12881

_____

D. C. Docket No. 98-00022-CIV-OC-10C

DONALD C. MAYNARD,

Plaintiff-Appellant,

versus

PNEUMATIC PRODUCTS CORP.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 22, 2000)**

Before TJOFLAT, WILSON and FLETCHER[*], Circuit Judges.

WILSON, Circuit Judge:

Donald C. Maynard appeals the district court's grant of judgment as a matter

of law to Pneumatic Products Corporation ("Pneumatic"). Because Maynard failed

_____

[*]Honorable Betty B. Fletcher, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

to prove that he is disabled within the meaning of the Americans with Disabilities Act ("ADA"), we affirm.

## I. BACKGROUND

Pneumatic Products Corporation ("Pneumatic") hired Donald Maynard in 1991 as an assembly line worker on Pneumatic's filter product line.[1] In 1994, Maynard sustained an on-the-job back injury in which he herniated a disc in his back. By March, 1996, as a result of the herniated disc, Maynard could not lift more than 14 pounds, sleep sufficiently (due to severe back pain), sit in a chair for more than 15-20 minutes at a time, stand for more than 10-15 minutes at a time, bend at the waist, run up steps, or walk more than 40-50 yards at a time.[2] Pneumatic knew about Maynard's back condition, and the limitations caused by his condition.

Pneumatic terminated Maynard's employment in March, 1996, purportedly because it was discontinuing the product line on which Maynard worked. Maynard contended that Pneumatic actually fired him "because of [his] back." He filed a

---

[1]Maynard went on to work for Pneumatic in several capacities, but for sake of brevity and clarity we summarize his positions as "assembly line worker."

[2]At trial, Maynard described his walking abilities as follows:
Q: [I]f you walked more than [40 or 50 yards], would it cause your back to hurt?
A: [My back] would start tensing up and I just have to stop for maybe five seconds and let the muscles start relaxing and then I can keep right on going.

charge with the Equal Employment Opportunity Commission ("EEOC") slightly

less than 300 days after his termination, claiming that Pneumatic violated the ADA

by firing him because of a disability (his back condition). After receiving his right

to sue letter, Maynard sued Pneumatic for violations of the ADA and the Florida

Civil Rights Act, Fla. Stat. ch. 760.01 et seq. (1997).

Maynard's claim proceeded to a jury trial, and the district court granted

Pneumatic's motion for judgment as a matter of law before the jury rendered its

verdict. The district court granted Pneumatic's motion for two reasons: first,

because Maynard failed to establish that he had a disability within the meaning of

the ADA; and second, because Maynard's EEOC and Florida Commission on

Human Relations ("FCHR") charges were not timely filed, hence his claims were

time barred. Maynard appeals both findings. We agree with the district court that

Maynard failed to prove he has a disability; therefore we do not rule on the court's

second ground for dismissal.[3]

---

[3]Ordinarily, a complaining party must file charges with the EEOC within 180 days of "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1) (1994). However, the time for filing a charge may be extended to 300 days in so-called "work-sharing states," if the complainant first files a timely charge in a state or local agency in the work-sharing state. Work-sharing states enter into work-sharing agreements with the EEOC, whereby states that have state or local agencies that have "authority to grant or seek relief from such [discriminatory] practice," receive notice of the alleged discrimination and an opportunity to investigate the allegations before a charge may be filed with the EEOC. 42 U.S.C. § 2000-5(e)(1). A charge may be filed with the EEOC after the state or local agency terminates its investigation. Under the Florida-EEOC work-sharing agreement, once charges are filed with the FCHR, there is "an instantaneous 'constructive termination'" of the FCHR proceedings, and the EEOC may begin its investigation.

## II. DISCUSSION

We review *de novo* the district court's grant of judgment as a matter of law, and view all evidence in the light most favorable to Maynard, the non-movant. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).

### A. A plaintiff's general burden of proof for a prima facie case under the ADA.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1995). To make out a prima facie case of discrimination under the ADA, an ADA claimant must prove that: (1) he has a disability; (2) he is a qualified individual; and (3) he was discriminated against

---

*See Griffin v. Air Products and Chemicals, Inc.*, 883 F.2d 940, 943 (11th Cir. 1989). Maynard filed a charge with the EEOC within 300 days; however, he never filed a charge with Florida's state agency, the FCHR.

EEOC "Form 5" allows a complaining party to check a box near the bottom of the form, which signals the EEOC to file the Form with the state agency also (here, the FCHR). When the complaining party does so, the EEOC forwards the charge to the state agency, and the party is deemed to have filed charges with the state agency first (as required by 42 U.S.C. § 2000e-5(e)(1) to extend the period for timely filing to 300 days). Maynard filled out Form 5, but he failed to check the box, and never filed directly with the FCHR. Nonetheless, the EEOC did forward Maynard's charge to the FCHR roughly 351 days after Pneumatic terminated Maynard.

We do not decide today whether Maynard's filing was timely. We do note, however, that Maynard's filing was not ideal, and caution future claimants that this sort of filing may not suffice under 42 U.S.C. § 2000e-5(e)(1).

because of his disability.  *See Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996), *modified*, 102 F.3d 1118 (11th Cir. 1996); 42 U.S.C. § 12112(a). Our focus today is on the first prong of the prima facie case – whether Maynard proffered sufficient evidence to prove he has a disability.[4]

A person has a disability if he: (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(2) (1995).  Maynard claims to qualify under the first definition of disability, by claiming to have a physical impairment that substantially limits more than one of his major life activities.[5]  Thus, our consideration "proceeds in three steps."  *Bragdon v. Abbott*, 524 U.S. 624, 631

---

[4]It is not clear whether Maynard is appealing the district court's denial of his Florida Civil Rights Act claim.  Maynard has not cited to any caselaw discussing or interpreting the Florida Civil Rights Act.  Regardless, our analysis of the ADA is the same as a disability analysis under the Florida Civil Rights Act.  *See Brand v. Florida Power Corp.*, 633 So.2d 504, 509 (Fla. Dist. Ct. App. 1994).

[5]Maynard's complaint alleged that he had a record of an impairment, but Maynard explicitly abandoned this argument on appeal.  Maynard also argues on appeal that Pneumatic "regarded him" as disabled, as evidenced by Pneumatic's alleged statement that it was firing Maynard "because of [his] back."  Maynard nowhere explains how Pneumatic supposedly regarded him as disabled.  Maynard seems to be arguing that Pneumatic regarded him as disabled in the major life activity of working, i.e., that Pneumatic fired Maynard because it regarded him as unable to work because of his back.  This argument has no merit, because Maynard presented no evidence tending to prove that Pneumatic regarded him as disabled in the major life activity of working.  *See Murphy v. United Parcel Serv., Inc.*, __ U.S. __, 119 S.Ct. 2133, 2139 (1999); ("[T]he undisputed record evidence demonstrates that petitioner is, at most, regarded as unable to perform only a particular job.  This is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the major life activity of working.").

5

(1998). First, we must decide whether Maynard's back injury is a physical impairment. *See id.* Second, we must decide whether the activities Maynard claims are substantially limited by his back injury qualify as major life activities under the ADA. *See id.* Finally, we must decide whether Maynard's back injury substantially limits the major life activities identified by Maynard. *See id*.

## B. Maynard's prima facie case.

Maynard claims that his physical impairment – his back injury – substantially limits him in the major life activity of walking.[6] Because Maynard failed to demonstrate that his ability to walk is substantially limited as compared to the average person in the general population's ability to walk, Maynard did not succeed in making out a prima facie case.

Maynard's back injury is a physical impairment. *See* 29 C.F.R. § 1630.2(h)(1) (1997) ("Physical . . . impairment means [a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: . . . musculoskeletal . . . ."). Maynard next needed to identify the major life activity affected by his back injury. Maynard points to the major life activity of walking,

---

[6]Maynard also contends that his back condition substantially limits several other of his major life activities, such as sitting and standing. Maynard stated at oral argument that walking was the "primary" and "clearest example" of his major life activities that were substantially limited. We accordingly limit our discussion to walking; our analysis would be no different with respect to the other major life activities suggested by Maynard.

which qualifies as a major life activity under the ADA. *See* 29 C.F.R. § 1630.2(i) (1997); *Sutton v. United Air Lines, Inc.*, __ U.S. __, 119 S.Ct. 2139, 2145 (1999). We may then turn to the third *Bragdon* step, and the heart of this appeal: whether Maynard proved that his condition substantially limits one or more major life activities.

The ADA fails to define "substantially limits," however the regulations promulgating the ADA explain:

> The term substantially limits means [u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. . . The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. §§ 1630.2(j)(1), (2) (1997); *see Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) ("Courts, including the Eleventh Circuit . . . frequently look to EEOC regulations to assess the next analytical step of determining whether a physical impairment substantially limits a major life activity.").

The EEOC's interpretive guidance on the ADA further instructs:

[A]n impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity. Thus, for example, an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking.

29 C.F.R. pt. 1630, App. § 1630.2(j) (1997).

Maynard argues that he is substantially limited in the major life activity of walking because his impairment "restricts the duration, manner or condition under which [he] can perform [the] major life activity . . . ." *Id*. To sustain his burden of proof, Maynard needed to prove that his ability to walk is significantly restricted **as compared to the average person in the general population**. This Maynard did not do.

Maynard claims his back significantly restricts his ability to walk because he cannot walk more than 40-50 yards.[7] But Maynard offers no proof of how far the average person can walk.[8] Maynard ignores a crucial element of the disability-prong of the prima facie case: he must demonstrate that he is significantly

---

[7]Viewing the evidence in the light most favorable to Maynard, as we must given our standard of review, we accept Maynard's submissions as true.

[8]With respect to a few of Maynard's other major life activities, Maynard claimed that he cannot sit or stand for more than brief periods of time, and cannot run up steps. Here again, however, Maynard offered no evidence showing how long the average person can sit or stand, and how the average person negotiates steps.

restricted in the performance of a major life activity "as compared to . . . the average person."  29 C.F.R. § 1630.2(j)(1)(ii); *see, e.g., Gonzales v. National Bd. of Med. Exam'rs*, 6th Cir., 2000, __ F.3d __ (No. 99-1931, August 22, 2000) (comparing appellant's abilities with abilities of the average person in the general population); *Moore v. J.B. Hunt Transp., Inc.*, 7th Cir., 2000, __ F.3d __ (No. 99-1853, July 19, 2000) (quotation marks omitted) (citation omitted) ("We do not believe that these limitations constitute significant restrictions on [appellant's] ability to walk when compared with the ability of the average person . . . ."); *Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 32 (1st Cir. 2000) ("[Appellant] has not adduced sufficient evidence that, compared to the average person in the general population, she was significantly restricted in her hearing."); *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 497 (10th Cir. 2000) ("Because [appellant] introduced no evidence suggesting she experienced greater difficulty than anybody else learning the new computer system or any other new material, she has failed to demonstrate that she was significantly restricted in learning."); *Bowen v. Income Producing Management of Oklahoma, Inc.*, 202 F.3d 1282, 1287 (10th Cir. 2000) ("[T]he evidence [shows] that . . . [appellant] retained greater skills and abilities than the average person in general . . . ."); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir. 1999)  ("[T]here was no testimony that

9

[appellant] stands or walks, during the fifty minutes per hour that he can, with any less ability than the average person."); *Talk v. Delta Air Lines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (quotation marks omitted) ("[Appellant] asserts that she walk[s] with a limp and move[s] at a significantly slower pace than the average person. . . . We find that, although [appellant] experiences some impairment to her ability to walk, it does not rise to the level of a substantial impairment as required by the ADA . . . ."); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 644 (2d Cir. 1998) (quoting 29 C.F.R. § 1630.2(j)(2)), *cert. denied*, 526 U.S. 1018 (1999) ("[T]he evidence was insufficient to support the finding that any of the officers' impairments were substantial, particularly when evaluated in light of the first EEOC factor: 'the nature and severity of the impairment' as compared with the average person's ability to perform those activities."); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414-15 (6th Cir. 1997) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) ("Although the record clearly indicates that [appellant] suffers an impairment that affects to some degree his ability to walk, he has not 'adduced sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population.'"); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15-16 (1st Cir. 1997) ("Impairment is to be

measured in relation to normalcy, or, in any event, to what the average person does."); *Nowlin v. K Mart Corp.*, 50 F. Supp. 2d 1064, 1070 (D. Kan. 1999) (citation omitted) ("Proof of the lifting restriction alone is insufficient to show substantial limitation. Plaintiff fails to offer any evidence comparing his lifting ability to that of the general population."); *Bochenek v. Walgreen Co.*, 18 F. Supp. 2d 965, 970 (N.D. Ind. 1998) ("[Plaintiff] does not offer any expert medical testimony to bolster her contention that she is substantially limited in walking or the other mentioned activities.").

Maynard suggests that a trier of fact should determine whether his walking restriction amounts to a substantial limitation. A trier of fact may be the appropriate party to determine whether an ADA claimant is significantly restricted in the performance of a major life activity. *See, e.g., Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1134 (11th Cir. 1996), *modified*, 102 F.3d 1118 (11th Cir. 1996) (In a situation where the ADA claimant suffered from "marked fatigue, lack of energy, lack of interest, poor concentration, memory problems, suicidal thoughts, depressed affect, and irritability," we held, "[w]e think this evidence presents a case for a jury to determine . . . whether those symptoms substantially

limited a major life activity.").[9] However, the claimant must present sufficient evidence of the significant restriction before the court may turn the issue over to the trier of fact. This evidence must include information regarding the abilities of the average person in the general population. Maynard proffered no evidence on this point, and thus failed to make out a prima facie case.

The simple proposition we clarify today – that plaintiffs must present comparator evidence to demonstrate their substantial limitations – has been largely overlooked in ADA cases. We take pains to highlight this obvious and crucial element in a plaintiff's prima facie case because a review of ADA caselaw demonstrates that plaintiffs are continually failing to present this necessary evidence.

Some courts have seemingly taken judicial notice of the capabilities of the "average person in the general population." To the extent other courts have taken judicial notice of the ADA comparator's capabilities, we disagree with those cases. We instead endorse the proposition that, "To establish that an impairment substantially limits a major life activity such as sitting, standing, or walking, **an ADA plaintiff must not merely provide evidence of her own limitations . . . .**

---

[9]We assume that the plaintiff in *Pritchard* submitted the necessary comparator evidence. *Pritchard* does not indicate otherwise.

**The first key is to develop comparative evidence.** Who, then, is the relevant comparator? The EEOC regulations provide that it is 'the average person in the general population.'" Jeffrey A. Van Detta & Dan R. Gallipeau, *Judges and Juries: Why Are So Many ADA Plaintiffs Losing Summary Judgment Motions, and Would They Fare Better Before a Jury?  A Response to Professor Colker*, 19 Rev. Litig. 505, 518 (2000) (emphasis added) (quoting 29 C.F.R. § 1630.2(j)(1)).[10]

We note finally that "new" comparator evidence will not be necessary in every case.  Comparator evidence may already be established where, for example, caselaw, the regulations, or the EEOC's interpretive guidance  makes clear that a

---

[10]Van Detta & Gallipeau also aptly observe, "The EEOC's laundry list of evidence relevant to determining whether an impairment imposes a substantial limitation makes it crystal clear that an individual's limitation cannot be viewed only in the context of her own life and work. **Evidence comparing the plaintiff's activities in light of the plaintiff's limitations to the unlimited activities of the average person in the general population is the heart and soul of surviving a Rule 56 motion**. This requires the ADA plaintiff to adduce evidence that creates a genuine factual dispute as to each of the evidentiary elements identified by the EEOC. Those elements are as follows:
1. That the ADA plaintiff is significantly restricted in
a. the condition; or
b. the manner; or
c. the duration
2. of performing a specific major life activity
3. **compared with the**
a. the condition; or
b. the manner; or
c. the duration
4. **under which the average person in the general population can perform that same major life activity**.  Marshaling this kind of comparative evidence is often what makes the difference between defeat and victory for an ADA plaintiff on the employer's summary judgment motion. *Id.* at 521-22 (emphasis added) (quotations omitted) (citations omitted).

13

plaintiff's condition substantially limits a major life activity as compared to the average person in the general population.[11] However, whenever the necessary comparator evidence is not readily drawn from such a source,[12] plaintiffs must provide evidence from which the trier of fact may determine whether an impairment is substantially limiting.[13]

## III. CONCLUSION

An ADA complainant who alleges that an impairment significantly restricts the performance of a major life activity must present some evidence of how well the average person in the general population performs the major life activity in question. The ADA requires this comparator evidence. Since Maynard failed to

---

[11]*See, e.g., Bragdon*, 524 U.S. at 641 (holding that HIV victims are substantially limited in the major life activities of conception and childbirth).

[12]Here, for example, the regulations provide that "an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking." 29 C.F.R. pt. 1630, App. § 1630.2(j). Maynard needed to give a trier of fact some basis on which to judge whether his walking ability – walking 40-50 yards – is akin to "very brief periods of time." He could only accomplish this by showing how far the average person can walk, and then likening that average person's ability to more than "very brief periods of time,"and contrasting that with his ability, which he would want to liken to a "very brief period[] of time."

[13]We will not delineate exactly what evidence would suffice as comparator evidence. We envision that expert testimony and/or statistical evidence commonly will be used to demonstrate the abilities of the average person in the general population. As with the comparator evidence required in the context of demonstrating a substantial limitation in the major life activity of working, the burden we place on plaintiffs is "not intended to require an onerous evidentiary showing." 29 C.F.R. pt. 1630, App. § 1630.2(j).

14

present such comparator evidence, the district court properly granted Pneumatic

judgment as a matter of law.

**AFFIRMED**.