Danielle **THOMPSON**, Plaintiff,

v.

**ORANGE LAKE COUNTRY CLUB, INC.**, Defendant.

No. 6:01–CV–974–ORL–JGG.

United States District Court, M.D. Florida, Orlando Division.

July 23, 2002.

John Vernon Head, P.A., Orlanda, FL, for Plaintiff.

Ronald Mark Schirtzer, John S. Lord, Jr., Erin A. Webb, Foley & Lardner, Orlando, FL, for Defendant.

### ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause came on for consideration without oral argument on the defendant's Motion for Summary Judgment and Incorporated Memorandum of Law. Docket Nos. 22 and 23. In response, the plaintiff filed her "Response Requesting Denial of Defendant's Motion for Summary Judgment," which the Court views a memorandum in opposition. Docket No. 28. The parties rely on the following evidence in support of their positions: Deposition of Danielle Thompson (Vols. I and II), Docket No. 25.; Affidavit of Brian Lower, Docket No. 26; Deposition of Pamela McColloch, Docket No. 29, Ex. 1; Records of the Florida Commission on Human Rights, Docket No. 29, Ex. 2; Affidavit of Danielle Thompson, Docket No. 29, Ex. 3; Thompson's Responses to Interrogatories and Request to Produce, Docket No. 29, Ex. 4; and Orange Lake Country Club's Policy Manual, Docket No. 29, Ex. 5. For the reasons set forth below, the defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

### I. *PROCEDURAL BACKGROUND*

This is an employment-related action. Orange Lake Country Club, Inc. ("Orange Lake") hired plaintiff Danielle Thompson ("Thompson") under contract to work as a Team Leader for the VIP Sales Division in March of 1997. On November 5, 1999, Thompson was terminated. Thompson never filed a charge of gender discrimination with the United States Equal Oppor-

tunity Commission ("EEOC"). However, on January 18, 2001, Thompson filed a charge of discrimination with the Florida Commission on Human Relations ("Florida Commission") alleging discrimination and retaliation based on gender. On July 17, 2001, Thompson filed a two count complaint against Orange Lake in state court. Orange Lake successfully removed the case to this Court on August 20, 2001 alleging federal question jurisdiction. *See* Docket No. 2.

In Count I, Thompson asserts claims of unlawful gender discrimination, hostile sexual environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII) and the Florida Civil Rights Act of 1992, Fla. Stat. 760 *et seq.,* ("FCRA"). *See* Docket No. 2 at 4—6. In Count II, Thompson asserts claims for defamation, libel, and slander. *See* Docket No. 2 at 6—7. In support of these claims, Thompson claims that her former supervisor, Sean Barrett ("Barrett"), gave poor and false references about her moral character and work abilities to prospective employers, and that she was denied jobs because of these references. *See* Docket No. 2, ¶ 27.

On April 15, 2002, Orange Lake filed the present motion, asserting numerous grounds for summary judgment. Docket No. 22. First, Orange Lake claims it is entitled to summary judgment as to Thompson's Title VII claims because Thompson failed to exhaust her administrative remedies by filing a charge of discrimination with the EEOC. Second, Orange Lake argues that the FCRA claims of discrimination and retaliation are time-barred because Thompson failed to file a charge of discrimination with the Florida Commission within the limitations period provided in the FCRA. Third, Orange Lake claims that, unlike libel and slander, Thompson's "defamation" cause of

action is not a recognized cause of action under Florida law. Fourth, Orange Lakes maintains that it is entitled to summary judgment on Thompson's libel claim because Thompson admitted that she was not defamed in writing. Finally, Orange Lake claims that it is entitled to summary judgment as to Thompson's slander claim because it cannot be held liable for the acts of Thompson's former supervisor—acts which were taken outside the scope of his authority and which were made for his own purposes and not on behalf of Orange Lake.

On May 3, 2002, Thompson filed a response requesting denial of defendant's motion for summary judgment. The Court treats the response as a memorandum in opposition. Docket No. 28. Thompson argues that her filing of the Florida Commission charge satisfies the EEOC exhaustion requirements; that the 365–day limitations period set by the FCRA for filing a charge with the Florida Commission is equitably tolled by Orange Lake's threats of retaliation; and that Orange Lake is liable for slanderous employment evaluations made by an employee that Orange Lake placed in a supervisory management position.

## II. THE LAW

### A. Standard of Review on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 ©). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593—94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be

drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

In cases where employment discrimination has been alleged, the Eleventh Circuit has long stated that the district courts should exercise caution in granting summary judgment because such cases usually involve the examination of motive and intent. *Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994) (quoting *Hayden v. First Nat'l Bank,* 595 F.2d 994, 997 (5th Cir. 1979)); *accord Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991) (stating that summary judgment should seldom be granted in cases alleging employment discrimination). A defendant

in an employment discrimination case is nevertheless entitled to summary judgment if the plaintiff has failed to establish a prima facie case. *See Pace v. Southern Railway System,* 701 F.2d 1383, 1391 (11th Cir.1983).

### B. *Material Submitted in Opposition to Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House,* 146 F.3d 832, 834 (11th Cir.1998), *citing Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett–Murray Corporation v. Bone,* 622 F.2d 887, 893 (5th Cir.1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984).

### C. *Exhaustion of Administrative Remedies*

Section 2000e–5 (f)(1) of 42 U.S.C. permits private civil litigants to enforce the rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, *et seq.* An aggrieved individual may file a private suit if the Equal Employment Opportunity Commission fails to commence a suit in the Commission's name within 180 days of the date the individual files a charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5 (f)(1). The language of § 2000e–5 (f)(1) contemplates the filing of a charge with the EEOC and a subsequent investigation [1] of the facts alleged in the grievance by the EEOC. The charge must be filed with the EEOC within 180 days of

---

1. In practice, the EEOC does not investigate the bulk of the complaints that it receives. In most cases, the EEOC issues "right to sue" letters to claimants after minimal administrative review.

the alleged unlawful employment practice. 42 U.S.C. § 2000e–5 (e)(1). Read together, § 2000e–5 (e)(1) and (f)(1) impose an administrative exhaustion requirement in private Title VII suits. The timely filing of a charge of discrimination is a prerequisite to bringing a private suit under Title VII. *Calloway v. Partners National Health,* 986 F.2d 446, 449 (11th Cir.1993); *Comer v. City of Palm Bay,* 171 F.Supp.2d 1307 (M.D.Fla.2000).

A Title VII plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the administrative charge of discrimination. *A.M. Alexander v. Fulton County, Georgia,* 207 F.3d 1303, 1332 (11th Cir.2000). As long as allegations in the judicial complaint and proof are reasonably related to charges in the administrative filing, and no material differences between them exist, the court will entertain them. *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir.1989). Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. *Wu,* 863 F.2d at 1547. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial relief, are not appropriate. *Wu,* 863 F.2d at 1547.

Ordinarily, a Title VII plaintiff must file a charge complaining about an allegedly unlawful employment practice with the EEOC within 180 days of the employment practice. *See* 42 U.S.C. § 2000e–5 (e)(1). However, if a plaintiff initially institutes proceedings with a state or local agency that has the authority to grant relief from the alleged discriminatory practice, the limitations period for an EEOC filing is extended to 300 days. *Maynard v. Pneu-*

*matic Prods. Corp.,* 256 F.3d 1259, 1262 (11th Cir.2001) (citing 42 U.S.C. § 2000e–5(e)(1)).

In order to allow states the first opportunity to remedy discrimination, Title VII provides that a plaintiff may not file with the EEOC earlier than 60 days after the initial filing (the "60–day deferral period"), unless that agency's "proceedings have been earlier *terminated.*" *Maynard,* 256 F.3d at 1262 (quoting 42 U.S.C. § 2000e–5(c)) (emphasis added). In certain "deferral states," [2] the state agency waives the 60–day deferral period (*i.e.,* waives the state's right to first examine the issue) in a cooperative agreement known as a "worksharing agreement" between the state agency and the EEOC. *Maynard,* 256 F.3d at 1263. In such a situation, the state agency is said to have *"terminated"* its proceedings pursuant to the 60–day deferral period. *Maynard,* 256 F.3d at 1263. Thus, a plaintiff may immediately file a claim with the EEOC without waiting the 60 days.

Certain worksharing agreements between a state agency and EEOC provide for "dualfiling." *See* 42 U.S.C. § 2000e–8 (b) (authorizing such agreements). Dualfiling is the process by which a charge of discrimination filed with one agency is deemed filed with the other agency. Some deferral states provide an aggrieved party with the opportunity to check a box on the charge of discrimination indicating whether the party desires the charge to be filed with the appropriate state agency. While examining a worksharing agreement between the Virginia Council on Human Rights and the EEOC, the United States

---

**2.** States that prohibit unlawful discrimination and that have established state or local authorities to grant or seek relief for such discrimination are commonly referred to as "deferral states" because the EEOC must defer to the state agencies for up to 60 days. *Martinez*

*v. United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1373,* 772 F.2d 348, 350 (7th Cir.1985); *see Maynard,* 256 F.3d at 1262 (citing Section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c); 42 U.S.C. § 2000e-(e)(1)).

Court of Appeals for the Fourth Circuit explained:

The worksharing agreement establishes streamlined procedures between the two agencies for managing claims. Significantly, it designates each agency as the other's agent for purpose of receiving and drafting charges of discrimination. Under the terms of the [worksharing agreement], a claim received by one agency is deemed received by the other, initiating each agency's proceedings for purposes of Title VII, section 706(c). The [worksharing agreement] further provides that each agency will process Title VII and ADEA charges it originally receives... Thus, under the express terms of the [worksharing agreement], a plaintiff, by filing charges with the EEOC, thereby commences proceedings with both the [state agency] an the EEOC.

*Puryear v. County of Roanoke,* 214 F.3d 514, 519 (4th Cir.2000); *see also Bolinsky,* 69 F.Supp.2d at 847 ("because the plaintiff's filing with the EEOC automatically commenced and terminated the state proceedings on his charge, his filing with the EEOC was a sufficient exhaustion of his state law remedies").

■■■ Florida is a "deferral" state due to the provisions of the FCRA. *See Maynard,* 256 F.3d at 1262; *Thomas v. Florida Power & Light Co.,* 764 F.2d 768, 770 (11th Cir.1985). The statutes of Florida prohibit the unlawful employment practices of gender discrimination alleged by Thompson. *See* Fla. Stat. § 760.01. In order to maintain a cause of action under the FCRA, a party must first exhaust all available administrative remedies. *See Williams v. Eckerd Family Youth Alternative,* 908 F.Supp. 908, 910 (M.D.Fla.1995). To bring a claim under the FCRA, an aggrieved party must first file a complaint with the Florida Commission, which then has the responsibility of issuing a reasonable cause

determination. *See Williams v. Eckerd Family Youth Alternative,* 908 F.Supp. 908, 910 (M.D.Fla.1995); Section 760.11(a) of the FCRA requires that a plaintiff file a charge of discrimination with the Florida Commission within 365 days of the alleged discrimination. *Caraballo v. South Stevedoring, Inc.,* 932 F.Supp. 1462, 1464 (S.D.Fla.1996).

■■■ On January 18, 2001, Thompson filed her charge of discrimination and retaliation with the Florida Commission on Human Relations. Thompson never filed a charge with the EEOC. She instead alleges that by filing with the Florida Commission she simultaneously satisfied any filing requirement of the EEOC. Whether Thompson's filing of her discrimination charge with the Florida Commission serves as dual filing with the EEOC depends upon the terms of the Worksharing Agreement between the Florida Commission and the EEOC. The Agreement prescribes the circumstances under which filing with one agency constitutes filing with the other. *See Maynard,* 256 F.3d at 1264; *see, e.g., Griffin v. Air Prods. & Chems., Inc.,* 883 F.2d 940, 943 (11th Cir. 1989) (examining an earlier version of the EEOC–Florida Commission Worksharing Agreement). The terms of the Agreement determine whether Thompson's filing with the Florida Commission constituted a simultaneous filing with the EEOC. *See, e.g., Maynard,* 256 F.3d at 1264; *Puryear v. County of Roanoke,* 214 F.3d 514, 519 (4th Cir.2000).

Unfortunately, neither party in this case made the EEOC–Florida Commission Worksharing Agreement a part of the record. No federal case or Florida case has established the content and effect of the applicable worksharing agreement so that this court may resolve the issue as a matter of law. In a similar case, cited by

neither party, a panel of the Eleventh Circuit recently held that:

> [Plaintiff] could only demonstrate timely filing if he showed that the EEOC–FCHR [Florida Commission of Human Relations] worksharing agreement provides that the EEOC is the FCHR's agent for purposes of receiving complaints, and that the FCHR constructively terminates its proceedings when the EEOC receives a charge filed during the deferral period. As stated earlier, ... plaintiff bears the burden of proving that he timely filed his charge with the EEOC; [Plaintiff] did not sustain this burden of proof, as he failed to enter the necessary EEOC–FCHR worksharing agreement into the record. Therefore, the district court appropriately granted judgment as a matter of law in [defendant's] favor.

*Maynard*, 256 F.3d at 1264 (majority opinion of panel).

The Honorable Betty B. Fletcher, United States Circuit Judge for the Ninth Circuit, sitting in the Eleventh Circuit by designation, disagreed with the majority's opinion. *Maynard*, 256 F.3d at 1264—66 (dissenting opinion). In her dissent, Judge Fletcher argued that the agreement creates rules of law that prescribe the circumstances under which filing with one agency constitutes filing with the other. *Id.* at 1264. Thus, the fact that the agreement was not entered into the record, states Fletcher, is irrelevant: it is the district court's duty to identify and interpret the sources of law necessary for deciding the case before it. *Maynard*, 256 F.3d at 1264.

#### D. *Libel And Slander*

 To recover for libel or slander under Florida law, a plaintiff must demonstrate that: 1.) the defendant published a false statement; 2.) about the plaintiff; 3.) to a third party; and 4.) the party suffered damages as a result of the publication. *Valencia v. Citibank International*, 728 So.2d 330 (Fla.3d D.C.A.1999); *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So.2d 1025, 1027 (Fla.3d D.C.A.1981). Libel is defined as the unprivileged written publication of false statements. *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir.1999).

Prior to 1990, employers had a common law qualified privilege to discuss former employees with prospective employers without liability. *See, e.g., Nodar v. Galbreath*, 462 So.2d 803 (Fla.1984); *Boehm v. American Bankers Insurance Group, Inc.*, 557 So.2d 91 (Fla.3d D.C.A.1990). However, because the communication in this case related to Thompson's "job performance," this case is governed by the Florida Legislature's codification of the common law:

> An employer who discloses information about a former employee's job performance to a prospective employer of the former employee upon request of the prospective employer or of the former employee is presumed to be acting in good faith and, unless lack of good faith is shown by clear and convincing evidence, is immune from civil liability for such disclosure or its consequences. For purposes of this section, the presumption of good faith is rebutted upon a showing that the information disclosed by the former employer was knowingly false or deliberately misleading, was rendered with malicious purpose, or violated any civil right of the former employee protected under chapter 760.

Fla. Stat. 768.095 (1997).

 A defamatory statement is one that tends to harm someone's reputation in the community or deters others from associating with the person. *Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 803 (Fla. 1st D.C.A.1997). A false defamatory statement which suggests that some-

one has committed a dishonest or illegal act is slander *per se*. Slander *"per se"* is actionable on its face, but slander *"per quod"* requires additional explanation of the words used to show that they have a defamatory meaning or that the person defamed is the plaintiff. *Hoch v. Rissman, et al.*, 742 So.2d 451 (Fla. 5th D.C.A. 1999); *Hood v. Connors*, 419 So.2d 742 (Fla. 5th D.C.A.1982).

 In slander *per se* actions, general damages are presumed; for *per quod* actions, the plaintiff must allege and prove special damages. *Hoch*, 742 So.2d at 451. An oral communication that imputes to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office is slander *per se*. *Campbell v. Jacksonville Kennel Club*, 66 So.2d 495 (Fla. 1953); *Wolfson v. Kirk*, 273 So.2d 774 (Fla. 4th D.C.A.1973); *Sprovero v. Miller*, 404 So.2d 793 (Fla.3d D.C.A.1981) (statements which imputed conduct and characteristics to the plaintiff which were incompatible with the exercise of his construction business constituted slander *per se*); *see also Chiavarelli v. Williams*, 256 A.D.2d 111, 681 N.Y.S.2d 276 (1998) (allegation that hospital official would misuse his supervisory powers to obtain sexual favors stated a claim for defamation *per se*). Thus, no showing of special damages is required.

 In a defamation action, the liability of a company is dependent upon the liability of its agents. *Schreidell v. Shoter*, 500 So.2d 228, 232 (Fla.3d D.C.A.1986). Generally, a corporate employer can be held vicariously liable for an intentional act of its employee when the employee is acting within the scope of the employer's apparent authority, even if the employer did not permit or otherwise authorize the act, or it was not necessary or appropriate to serve the interest of the employer. *Dieas v. Associates Loan Co.*, 99 So.2d 279, 280—81 (Fla.1957); *accord Canto v.*

*J.B. Ivey and Company*, 595 So.2d 1025(Fla. 1st D.C.A.1992); *Lay v. Roux Lab., Inc.*, 379 So.2d 451, 453 (Fla. 1st D.C.A.1980); *Wackenhut Corp. v. Greene*, 238 So.2d 431, 432 (Fla.3d D.C.A.1970).

## III. APPLICATION

### A. Undisputed Facts

Orange Lake is a timeshare resort in Orange County near Walt Disney World. Lower Affid. ¶ 3. Orange Lake has two timeshare sales divisions, Direct Line Sales and VIP Sales, for which salespeople are hired under contract to sell Orange Lake's timeshares. Lower Affid. 3. Thompson was first hired to work under contract at Orange Lake in May of 1991 as a salesperson. Thompson Depo. (Vol.I) at 17—18; Dkt 2 ¶ 12; Lower Affid. 4. She voluntarily terminated her contract in August of 1994 without incident. Thompson Depo. (Vol.I) at 21; Dkt. 2 ¶ 12; Lower Affid. ¶ 4.

Orange Lake re-hired Thompson under contract in March of 1997 as a Team Leader for the VIP sales Division. Thompson Depo. (Vol.I) at 25; Dkt. 2, ¶ 12; Lower Affid. ¶ 5. Orange Lake terminated Thompson's contract on November 5, 1999. Thompson Depo. (Vol.I) at 153—54; Lower Affid. ¶ 5. Thompson claims that during the course of her second contract with Orange Lake, she was sexually harassed by her supervisor, Sean Barrett. Docket No. 2, ¶ 14, 15. She admits, however, that she never reported the harassment to anyone at Orange Lake, or even her family, until after her termination. Thompson Depo. (Vol.I) At 78, 87, 108, 109; (Vol.II) at 150, 155; Lower Affid. ¶ 5. Once she reported the harassment, Orange Lake placed Thompson's termination on hold pending the outcome of an investigation. Thompson Depo. (Vol.II) at 155—58; Lower Affid. ¶ 5. Orange Lake conducted a thorough investigation of Thompson's alle-

gations. Thompson Depo. (Vol.II) at 156—59; Lower Affid. ¶ 5. All of the individuals identified by Thompson as having knowledge of the alleged harassment were interviewed. Because Thompson's allegations of sexual harassment could not be corroborated, Orange Lake upheld its decision to terminate Thompson. Thompson Depo. (Vol.II) at 156—61; Lower Affid. ¶ 5.

Thompson alleges that subsequent to her termination, her former supervisor, Sean Barrett, slandered her by contacting prospective employers and giving them false information about her. The first such incident occurred in late November or early December 1999, after the November 5, 1999 termination. Thompson Depo. (Vol.II) at 164. Thompson testified that she was offered a job with the Shell timeshare company's Arizona division on November 30, 1999. Thompson Depo. (Vol. II ) at 164—65. Shortly, thereafter, Thompson claims that Simon Crawford Welch, Vice President of Sales and Marketing for Shell, told her that Barrett stopped by his office and telephoned him. Thompson Depo. (Vol. II ) at 166—67. Barrett allegedly warned Welch that Thompson was "bad news," was "sexual harassment material," that she had a lawsuit against Orange Lake and that "you don't want her in your company." Thompson Depo. (Vol.II) at 167—68. Thompson testified that Crawford told Barrett that "[w]e already hired her and she comes with the highest recommendations that I've ever seen." *Id.* Thompson admits that Barrett "didn't get anywhere" with his comments. *Id.* Thompson also never reported this incident to Orange Lake. Shell employed Thompson until she voluntarily left Orange Lake in August 2000 to return home to Orlando. Thompson Depo. (Vol. II) at 169—71.

Upon returning to Orlando in August of 2000, Thompson alleges that Fairfield Properties hired her. Thompson Depo. (Vol.II) at 168—69. However, prior to commencing work for Fairfield in early August, Thompson received a telephone call from Bill Parker, Head Recruiter at Fairfield. Thompson Depo. (Vol.II) at 172—73. Parker stated that his brother, Dean Parker, the Director of Sales for Fairfield, received a call from Barrett. Barrett allegedly told Dean Parker that Thompson was "bad news," "sexual harassment material," that she had a lawsuit against Orange Lake and that the company should stay away from her. Thompson Depo. (Vol. II ) at 172—75. Parker then allegedly told Thompson that they could not hire her based on this call from Barrett. Thompson Depo. (Vol.II) at 175.

Thereafter, Thompson alleges that she went through the interview process at the Vistana timeshare company but never receive a response. Thompson Depo. (Vol. II) at 183—84. Thompson alleges that she was later told by an unidentified friend who formerly worked at Vistana: "You know why you didn't get that phone call back. Because Sean Barrett made his phone calls to the management staff there at Vistana." Thompson Depo. (Vol.II) at 182—84. However, Thompson admitted in deposition testimony that her friend never told her what Barrett had said because Thompson's friend did not know herself. Thompson Depo. (Vol.II) at 184. Thompson also did not know who Barrett had allegedly spoken to at Vistana. Thompson Depo. (Vol.II) at 184. Almost immediately, Thompson became employed at Marriott's timeshare company in August of 2000. Thompson Depo. (Vol.II) at 186—87.

Thompson contacted Orange Lake's Human Resources Department and Brian Lower, its Senior Vice President and Corporate Counsel in August, 2000, purportedly after learning of Barrett's actions with

respect to Fairfield and Vistana. Thompson Depo. (Vol.II) at 175—76, 184—85; Lower Affid. ¶ 6. She told Lower about Barrett's actions. Thompson Depo. (Vol. II) at 175—76; Lower Affid. ¶ 6. Thompson admitted that Lower "got right back to [her] immediately." *Id.* He actually called her back within an hour or so and told her "[w]hatever we can do Danielle. We're sorry ... Whatever you need, a letter, whatever." Thompson Depo. (Vol.II) at 180—81; Lower Affid. ¶ 6. Lower also stated that Charlie Swan, President of Orange Lake, would write her a letter of recommendation and that "we'll get to the bottom of it." *Id.* Thompson never took advantage of Orange Lake's offer to provide a positive reference. Thompson Depo. (Vol.II) at 183, 186.

### B. *Whether Thompson Filed A Charge Of Discrimination With The EEOC*

As noted above, timely filing of a charge of discrimination with the EEOC is a prerequisite to bringing a private suit under Title VII. Thompson failed to file a charge of discrimination with the EEOC. The EEOC has verified that it has no record of any charge of discrimination filed by Thompson against Orange Lake. Instead, Thompson filed a charge of discrimination with the Florida Commission on Human Relations. There is no evidence that Thompson requested that the charge be dually-filed with the EEOC. *See* Ex. 12 to Thompson Depo. (Vol.II) at 148—49. Thompson failed to make the EEOC–Florida Commission Worksharing Agreement a part of the record. Consequently, there is no evidence showing that a discrimination charge filed with the Florida Commission is also deemed filed with the EEOC.

At this juncture, Thompson has failed to sustain her burden of proving that she filed her charge with the EEOC, a prerequisite to filing a Title VII action. However, this Court is hesitant to grant summary judgment because *neither party* provided the Court with a copy of the pertinent Worksharing Agreement between the EEOC and the Florida Commission, and because neither party has addressed much of the law set forth in this order.

Whether Thompson has exhausted her administrative claims with the EEOC by filing with the Florida Commission requires further briefing from the parties. Accordingly, the parties shall review the Worksharing Agreement and confer in a good faith effort to resolve the EEOC administration exhaustion issue. Additionally, Thompson shall show cause in writing, on or before August 1, 2002, why her Title VII claims should not be dismissed for failure to exhaust her administrative claims with the EEOC. Thompson shall file and serve a supplemental memorandum of law, together with the relevant portions of the applicable Worksharing Agreement. Thompson shall expressly state (with pinpoint citations): 1.) whether the Worksharing Agreement provides that filing a charge with the Florida Commission is tantamount to filing a charge with the EEOC; 2.) whether the Worksharing Agreement provides for dual-filing designation between the Florida Commission and the EEOC (and, if so, by what mechanism); and 3.) whether Thompson has met all the requirements, if any, for dual-filing her charge with the EEOC. Orange Lake shall file a memorandum in opposition on or before August 12, 2002.

### C. *Whether Thompson's FCRA Claims Are Untimely Filed*

Section 760.11 (a) of the FCRA requires that a plaintiff file a charge of discrimination with the Florida Commission within 365 days of the alleged discrimination. Thompson filed a charge of gender discrimination, hostile work environment, and retaliation with the Florida

Commission on January 18, 2001. *See* Docket No. 29, Ex. 2; Thompson Depo. (Vol.II) at 148—49, Ex. 12. In this charge, Thompson states that the most recent discriminatory act took place on November 5, 1999, the date of her termination. *See Id.* Clearly, no gender discriminatory act or hostile work-related act occurred after Thompson's termination. Thompson filed her charge 426 days after the November 5, 1999 alleged discriminatory action. As such, Thompson's claims of gender discrimination and hostile work environment under the FCRA are time-barred.

■ Thompson attempts to avoid this result by raising two unconvincing arguments. First, Thompson argues that the 365–day limitations period for filing a charge with the Florida Commission should be equitably tolled due to Orange Lake's alleged threats of an adverse employment action, if she were to file such a charge. After her termination, such alleged threats ring hollow and do not serve to toll the 365–day limitations period starting upon her termination.

■ Second, Thompson argues that the hostile work environment, quid pro quo sexual advances, and the retaliation for refusing such advances (both being fired and being defamed while seeking other employment) constitute a series of related incidents demonstrating an unlawful pattern or practice. Thompson claims that the pre-limitations conduct is sufficiently related to the post-limitations conduct to invoke the continuing violation doctrine for all the acts. *See* Docket No. 28 (relying on *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999)). The Court disagrees. Orange Lake's alleged pre-limitations conduct of gender discrimination and hostile work environment are not sufficiently related to the post-limitations retaliation claims premised upon defamatory statements.

As recently as last month—on June 10, 2002—the United States Supreme Court rejected such a contention, holding that a Title VII plaintiff raising claims of discrete discriminatory or retaliation acts must file his charge within the appropriate 180– or 300–day period. *National Railroad Passenger Corp. v. Morgan*, —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Supreme Court, however, distinguished allegations of discrete discriminatory or retaliatory acts from allegations of a hostile work environment, stating that a charge alleging a *hostile work environment* will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. *Id.* Here, Thompson was terminated on November 5, 1999. The acts relating to the gender discrimination and hostile work environment claims necessarily ended November 5, 1999—426 days prior to Thompson's filing her Florida Commission charge.

Thompson's claims of discrimination, as well as claims of retaliation, premised on acts occurring prior to January 18, 2000— more than 365 days prior to her filed Florida Commission charge—are time-barred by Thompson's failure to exhaust administrative remedies. However, claims of retaliation arising from acts occurring in August 2000—*i.e.,* Barrett's poor references to prospective employers—are not time-barred, and may support a retaliation claim under the FCRA.

### D. *Whether Thompson's Defamation, Libel, and Slander Claims Fail*

#### 1. *Defamation Claim*

Count II of Thompson's complaint is titled "Defamation, Libel, and Slander." Docket No. 2 at 6. Orange Lake claims that Florida recognizes no legal cause of action for "defamation," citing *Delacruz v. Peninsula State Bank*, 221 So.2d 772, 775 (Fla.2d D.C.A.1969). *Delacruz* holds that

there is no legal cause of action for "defamation." *Id.* at 775. The *Delacruz* court explained that libel and slander may be founded on defamation, but the cause of action itself is either libel or slander depending upon whether it is written or oral. *Id.* Florida Jurisprudence 2d lists "Defamation" as a title subject, and Florida Standard Jury Instruction MI 4 refers to "Defamation" in its title. Notwithstanding the semantic distinction between "defamation" and "libel or slander" in the title of the cause of action, the complaint alleges a valid cause of action. Therefore, the Court denies summary judgment with respect to the "defamation" claim.

## 2. Libel Claim

 Thompson's libel claim does not survive summary judgment. Under Florida law, libel is defined as the unprivileged written publication of false statements. *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191 (11th Cir.1999). In support of her libel claim, Thompson alleges in her complaint that "Barrett made his references orally and in writing." Docket No. 2, ¶ 29. In deposition testimony, however, Thompson states that she could not remember if Barrett had ever made any slanderous statements about her in writing. Thompson Depo. (Vol., II) at 228—29. In her memorandum in opposition, Thompson does not cite any defamatory statement made in writing. Because Thompson cannot satisfy this element of a libel claim, Orange Lake is entitled to summary judgment with respect to the libel claim.

## 3. Slander Claim

Orange Lake seeks summary judgment as to Thompson's slander claim for two reasons. First, Orange Lake claims that Thompson has failed to allege damages resulting from the alleged defamatory statements made to Thompson's prospective employers. In her memorandum of opinion, Thompson fails to identify a material issue of fact as to damages. She does not identify *any* damages resulting from the alleged defamatory statements. However, in her complaint, Thompson alleges a loss of pay and benefits, damage to her chosen career path, including being foreclosed from taking advantage of promotional opportunities and other employment opportunities. Docket No. 2 at 5.

 In response to Orange Lake's motion for summary judgment, Thompson has completely failed to specify the damages, if any, caused by the alleged defamatory statements. Nevertheless, the Court finds that the alleged defamatory statements—that Thompson was "bad news," that she is "sexual harassment material," that "you don't want her in your company,"—constitute slander *per se.* The alleged statements imply that Thompson would make frivolous charges of sexual harassment against her new employer, which would be conduct incompatible with the proper exercise of Thompson's new employment duties. Such statements constitute slander *per se. See Sprovero v. Miller,* 404 So.2d 793 (Fla.3d D.C.A.1981). Thus no showing of special damages is required; general damages are presumed. Summary judgment on the issue of damages is denied.

 Orange Lake claims that it cannot be held vicariously liable for Barrett's actions because Barrett acted outside the course and scope of his employment. Orange Lake claims that there is no evidence in the record that Orange Lake affirmatively authorized or directed Barrett to allegedly slander Thompson. Orange Lake argues that it has a policy of providing references to prospective employers only through the Human Resources Department, and only through neutral references (dates of employment and salary). Lower Affid. ¶ 7.

In response, Thompson makes only one argument—that the issue of whether Bar-

rett acted within the scope of his employment at Orange Lake is a jury question. *See* Docket No. 28 at 11 (citing *Scott v. Sun Bank of Volusia County*, 408 So.2d 591 (5th D.C.A.1982)). Nothing in the record indicates that Barrett and Orange Lake agreed as to the scope of Barrett's employment, i.e., as to whether his job responsibilities included making references 'for former employees. Nevertheless, there is ample evidence from which a reasonable jury could find Orange Lake vicariously liable for Barrett's alleged conduct.

Orange Lake employed Barrett, and placed him in a responsible management position over Thompson. In supervising Thompson (and in speaking with Thompson's job prospects), Barrett was doing Orange Lake's work, not his own. Orange Lake had the right to direct and control Barrett's conduct in performing his job duties regarding employment matters. This is true regardless of whether Orange Lake prohibited its managers from slandering former employees.

Orange Lake place Barrett in a position which gave Barrett significant knowledge about Thompson's work ability, skills, and job performance. As Thompson's supervisor, Barrett was therefore one of the persons at Orange Lake most likely to be asked about Thompson's suitability for a new position at another company. A jury question therefore remains as to whether Barrett was acting within the scope of his employment for Orange Lake in making the allegedly libelous statements about Thompson.

## IV. CONCLUSION

For the reasons stated above, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 22] is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that defendant's motion for summary judgment as to Thompson's Title VII claims of unlawful gender discrimination, hostile sexual environment, and retaliation is **DENIED**. It is

**FURTHER ORDERED** that Thompson shall show cause, in writing, on or before August 1, 2002, why her Title VII claims should not be dismissed for failure to exhaust her administrative remedies with the EEOC. Thompson shall include a supplemental memorandum of law, attaching all relevant portions of the applicable Worksharing Agreement (with pinpoint citations to the Agreement). Orange Lake shall file a memorandum in opposition on or before August 12, 2002. The Court has reset the final pretrial conference for Tuesday, August 6, 2002 at 3:30 p.m. This case remains set for trial beginning August 19, 2002. It is

**FURTHER ORDERED** that summary judgment is **GRANTED** as to Thompson's Florida Civil Rights Act claims of gender discrimination, hostile work environment, and retaliation premised on acts that occurred prior to January 18, 2000—365 days prior to the filing of her charge with the Florida Commission. It is

**FURTHER ORDERED** that summary judgment is **GRANTED** as to Thompson's claim of libel, and **DENIED** as to Thompson's claims of defamation and slander. It is

**FURTHER ORDERED** that the parties shall file, on or before the final pretrial conference on August 6, 2002, a *Joint* Final Pretrial Statement and a *Joint* Set of Jury Instructions that are consistent with the Court's ruling and Case Management and Scheduling Order.